LUKE LAVENDER, APPELLANT, v. HOLMES AND BOGGS, APPELLEES.

23  345
36  757
23  345
49  190

1. **Action quia timet.** Plaintiff instituted his action in the district court to quiet his title to certain real estate, to which defendants claimed title through a line of conveyances originating in a sheriff's deed and on executions against plaintiff. The deed to defendants from their grantor, by error in description, included a part of plaintiff's land not included in the sheriff's deed. *Held*, That plaintiff was entitled to a decree quieting his title to that part not conveyed by the sheriff.

2. ———: ATTORNEY AND CLIENT. Plaintiff, who was a defendant in certain foreclosure and execution proceedings, employed an attorney to represent him therein. While under such employment, and after the sale of plaintiff's real estate, the attorney entered into a stipulation with the attorneys for the execution plaintiffs by which it was agreed that the sheriff's sales should be confirmed and deeds executed to the purchasers. With some knowledge of the facts, plaintiff continued the attorney in his employ. It was held that plaintiff could not maintain an action to quiet his title against subsequent purchasers of the real estate for value, upon the ground of fraud and conspiracy on the part of his attorney with the attorneys for the execution plaintiffs, without proving that the defendants had knowledge of such alleged fraud prior to their purchase of their land and the payment therefor, even though they held title by deed which did not contain the usual covenants of warranty.

APPEAL from the district court of Lancaster county. Heard below before POUND, J.

*Lamb, Ricketts & Wilson* and *J. R. Webster*, for appellant.

Alleged frauds were not cured by order of confirmation. Freeman Executions, 433. *Taylor v. Courtnay*, 15 Neb., 190. *White Crow v. White Wing*, 3 Kan., 276. Sale may be set aside after confirmation. *Adams v. Secor*, 6 Kan., 542. *Coates v. Bank*, 23 Ohio State, 415. *Mc*

*Keighan v. Hopkins*, 14 Neb., 361. Purchaser is trustee for judgment debtor. 1 Perry Trusts, 3d Ed., Sec. 215. Herman Executions, 342. Original bill attacking judgment will lie. *Horn v. Queen*, 5 Neb., 472. *Lockwood v. Mitchell*, 19 Ohio, 448.

*Harwood, Ames & Kelly*, for appellees, cited: *LaFlume v. Jones*, 5 Neb., 260. *Berkley v. Lamb*, 8 Id., 392. *Day v. Thompson*, 11 Id., 123. *Wright v. Sweet*, 10 Id., 191. *Corry v. Campbell*, 34 Ohio State, 204. *Spafford v. Janesville*, 15 Wis., 526. Rorer Jud. Sales, Secs. 397–398. *Jones v. Simpson*, 116 U. S., 609.

REESE, CH. J.

This action was originally instituted in the district court by defendants, Holmes and Boggs, who filed their petition against plaintiff, by which they sought to remove a cloud from, and quiet the title to, certain real estate, of which they claimed to be the owners, resting their title upon an execution sale of plaintiff's property, and which by *mesne* conveyances, had been transferred to them. On the same day, one Julia M. Gregory filed a like petition against plaintiff, in which the title to other real estate was involved. Plaintiff answered in each case, alleging title in himself, and attacking the titles of defendants, upon the ground of fraudulent practices on the part of the purchasers and plaintiffs in execution at the sheriff's sales, and praying that the deeds executed upon such sales by the sheriff be set aside, declared void, and his title to the property be quieted. Subsequent to filing this answer, an order was made, by the district court, by consent of the parties, by which the two cases were consolidated and the title inverted, by which Lavender became the plaintiff, and requiring the parties to replead, Lavender to file the first plea or petition. After issue being joined, a trial was

had to the court, which resulted in a general finding and decree in favor of defendants. Subsequent thereto the matters involved in the Gregory suit were fully settled. The case was removed to this court by appeal by plaintiff, and pending argument here it was made to appear that a mistake had been made in the pleadings in the district court, and without a decision, on motion of defendants the cause was remanded, with leave to defendants to replead. Upon the issues being reformed, the cause was again submitted to the district court upon the original bill of exceptions, which included the testimony submitted at the former trial. The decision and decree was again rendered in favor of defendants, and plaintiff appeals.

It is insisted by defendants that a stipulation of settlement filed in the district court on the 21st day of December, 1885, should be taken and held as a final settlement of all questions involved in the case at bar. This stipulation is as follows:

"Luke Lavender vs. Julia M. Gregory et al. For and in consideration of full satisfaction and settlement, I hereby release all claims, demands, and liens of every name or nature in the above entitled action, and I hereby dismiss said cause from the records of the court, and judgment for costs is rendered in favor of plaintiff, and against defendants.

"Dated December 18, 1885.

"LUKE LAVENDER.

"Witness:

"J. B. ALKISSEN,
"E. P. CAMPBELL."

This stipulation was introduced upon the trial by defendant, but we think it sufficiently appears from the testimony that the settlement referred to in the stipulation had reference only to the case of Lavender against Gregory. It will, therefore, not be considered in this case.

It appears by the record that, prior to the sale of the real estate in dispute, by the sheriff, to satisfy certain exe-

cutions then in his hands, plaintiff was the owner thereof, his title being divested solely by the deeds executed by the sheriff, after confirmation of the sales by the district court. The basis of plaintiff's claim is, that prior to, and after the sales by the sheriff, the judgment creditors, their attorneys, and other parties, together with plaintiff's attorney, entered into a conspiracy, the purpose of which was to cause the property to be sold for less than its value, and purchased by them without any reference to his interest, and without any purpose or intention to have a fair sale of the property by which its value could be realized. It is further alleged by plaintiff that defendants, Holmes and Boggs, had knowledge constructively, if not actually, of the conspiracy and fraudulent practices of the parties named. This is denied by them.

We have examined the record carefully, and while we are wholly unable to find anything therein which could justify or excuse the action taken and the course pursued in making the sale, yet we believe that no good could result from a detail of the transactions shown by the record, and were this an action directed against the purchaser at the execution sale, and those engaged with them in the sacrifice of plaintiff's property, we would not hesitate to say that, notwithstanding the action of the district court in confirming the sales and ordering the deeds, we should declare the titles acquired thereunder absolutely void. But we find no proof of any knowledge or complicity, on the part of defendants, in the transactions detailed by the testimony. It also appears that, after the sale of the 22d cf March, 1879, notice was served upon the plaintiff's attorney, that the motion for confirmation would be heard before the district judge, at chambers, on the 2d day of April, 1879; and it was stipulated in writing between the plaintiff's attorney and the attorneys for the judgment creditors, that the motion for confirmation should be heard on the 24th day of March, of the same year, no

exceptions being filed, and it being agreed that plaintiff's attorney should not resist the application of the judgment creditors for confirmation. It is said by both parties in their briefs, that a stipulation was made between the parties to those actions, by their attorneys, that the sale should be confirmed of that date. Judging by the proceedings, as shown by the record, we presume this is true. But the record being very voluminous, and not indexed, we are at this time unable to find the stipulation among the files. Whatever may have been the want of good faith on the part of plaintiff's attorney, and however objectionable the course pursued by him in connection with the attorneys for the judgment creditors and others, we cannot see that the district court erred in holding that the defendants in this case should not be held responsible for such action, and we will dismiss that part of the case without further consideration.

A number of sheriff's deeds were introduced in evidence, and are in the record. The peculiar descriptions of the land levied upon render it impossible to clearly set out, in this opinion, the location of the property sold. After the confirmation of the sales, and deeds being made to the purchasers, the property seems to have been conveyed to Julia M. Gregory, and by her to defendants, by warranty deed; and it is claimed that the deed to defendants included more of plaintiff's land than was included in the deeds from the sheriff to the purchasers, and that the title of plaintiff, to a part of the land, was not conveyed by the sheriff. If this is true, it would readily appear that plaintiff was entitled to the relief prayed for, to that extent. By a careful examination of the sheriff's deeds, we find that the following described land, which appears to have been conveyed to defendants by Julia M. Gregory, is not included in the sheriff's deeds. It consists of two irregular tracts bounded as follows : Commencing at a point fifty feet east of the south-east corner of block twenty-two,

of Lavender's addition to the city of Lincoln, and running thence south· three hundred and fifty feet, thence east fifty feet, thence north three hundred and fifty feet, thence west fifty feet, to the place of beginning. Also a tract bounded by a line commencing fifty feet east of the south-east corner of block nineteen of Lavender's addition to the city of Lincoln, running thence south one hundred feet, thence east fifty feet, thence north one hundred feet, thence west fifty feet to the place of beginning. Being unable to find that this property was conveyed by the sheriff, by any of the deeds executed by him, we conclude that, to that extent, the decree of the district court was erroneous, and it must be modified accordingly.

Two warranty deeds were executed by Julia M. Gregory to defendants. The first, dated December 2, 1880, conveys, "all that certain part of the N.E. $\frac{1}{4}$ of N.W. $\frac{1}{4}$, Sec. 25, T. 10, R. 6, in Lancaster county, Nebraska, more particularly described as commencing 50 feet east of S.E. corner of block 22 of Lavender's addition to Lincoln, thence east 315 feet, thence south 500 feet, thence west 265 feet, thence south 300 feet, thence west 50 feet, thence north 800 feet to place of beginning. Also a strip of land to be used as a public street or highway forever, commencing 365 feet east of the north-east corner of block 12, in said Lavender's addition, thence north 650 feet, thence east 65 feet, thence south 650 feet to place of commencement, and also for the purpose of street and public highway a strip of land commencing 400 feet east of the north-east corner of block 12 of said Lavender's addition, thence south 300 feet, thence east 30 feet, thence north 300 feet, thence west 30 feet to commencement point. Excepting a strip of land from above descriptions 50 feet wide, running east and west, commencing 50 feet east of the S.E. corner of block 19 of Lavender's addition, thence north 50 feet, thence east 365 feet, thence south 50 feet, thence west 365 feet to place of beginning."

The second, conveying "a part of the N.E. ¼ of the N.W. ¼ of section No. 25, township No. 10 north, of range 6 east, in said Lancaster county, and more particularly described as commencing at a point fifty feet east of the south-east corner of block 22, Lavender's addition to Lincoln, Neb., for a commencement point, running thence east three hundred and fifteen (315) feet, thence north one hundred and fifty (150) feet, thence east two hundred and five (205) feet, thence south five hundred feet, thence west five hundred and twenty feet (520 feet), thence north three hundred and fifty feet to the commencement point. Also commencing at a point fifty (50) feet east of the south-east corner of block nineteen (19), of said Lavender's addition, for a commencement point, running thence east five hundred and twenty feet, thence south four hundred feet (400), west five hundred and twenty (520 feet), thence north four hundred feet, to the place of beginning. Except from the terms of warranty the piece of ground bounded as commencing one hundred feet east of the S.E. corner of block 12 of said Lavender's addition, thence east 300 feet, thence north 300 feet, thence west 300 feet, thence south 300 feet, to place of beginning."

It will thus be seen, that by the second deed a tract of land three hundred feet square was excepted from the terms of the warranty. It is insisted that this was only a quit-claim deed, in so far as it conveyed that part excepted from the warranty; that defendants will not be held to be *bona fide* purchasers, and therefore are subject to all the equities which might have been urged against Julia M. Gregory by plaintiff; the question presented is, whether or not plaintiff can recover this land, without reference to the fact that defendants purchased for value and in good faith.

In the *Lincoln Building and Saving Association v. Hass* 10 Nebraska, at page 584, Judge Lake, in writing the opinion of the court, says: " Our conclusion that the effect

of this quit-claim deed was only to pass the naked legal title, and changed no equities in the parties, is supported by the following and many other authorities," citing cases.

*Savage v. Hazard*, 11 Id., 323, arose upon a quit-claim deed executed by William T. Savage to Olivia T. Savage, the wife of Charles A. Savage, for a consideration expressed in the deed of $5,000, and upon this deed Olivia instituted her suit to set aside certain deeds mentioned in her petition, and to quiet her title. In that case the question as to the standing of grantee, growing out of her title by quit-claim deed, does not appear to have been discussed, but rather that the case was decided upon the evidence, as to whether the deed from the land owner, Charles A. Savage, to his brother William, and the conveyance from William to Olivia, were in good faith and *bona fide*. It is said in that case that "to constitute a *bona fide* purchase for a valuable consideration, it must be without notice, and with the money actually paid. In cases of trust there must not only be a denial of notice before the purchase, but a denial of notice before the payment of the money."

In the case at bar, the allegations of the petition were denied, and it is shown that the purchase price was actually paid. There is no proof of notice, on the part of defendants, of the fraudulent transactions alleged in the petition and detailed by the testimony.

In *Snowden v. Tyler et al.*, 21 Neb., 199, it is said by Judge MAXWELL, in writing the opinion, that, "The rule, no doubt, is, that a person who procures of another, real estate, and receives a quit-claim deed only therefor, is bound to inquire and ascertain at his peril of the outstanding equities existing, if any, against the title. The reason is, that his grantor will not warrant the title even against himself; therefore it is a cause of suspicion. We are not prepared to hold, however, that a quit-claim deed, where the grantor has already conveyed, will not in any case con-

vey title. It is not unreasonable to suppose that a quit-claim deed occurs in many titles where there is no out-standing equity."

In that case, the quit-claim deed had been executed to supply a deed which was supposed to have been lost, it was made to the grantee by such of the heirs of Snowden as were of lawful age, and it was held that the title was conveyed by the deed. We know of no other case decided by this court where the question here involved was pre-sented.

In Warvell on Abstracts, at page 196, after stating generally the rule that one who takes by a quit-claim deed cannot be regarded as a *bona fide* purchaser without notice of outstanding titles or equities, the author says that the doctrine seems harsh, and is not applicable in all cases. It prevails in settling conflicting titles, and is invoked to protect equities as against those charged with notice of their existence, but is never invoked to protect a fraudulent grantor, who by false representations induces a confiding purchaser to believe that he acquires a good title under a quit-claim deed. It is said, however, that a different rule prevails as to the grantee of one holding under a quit-claim, when such grantee holds by a warranty deed. In such cases such subsequent grantee is presumed to be a *bona fide* purchaser for value.

By section 50, Chap. 73 of Compiled Statutes of 1887, it is provided that, "Every conveyance of real estate shall pass all the interest of the grantor therein, unless a con-trary intent be reasonably inferred from the terms used."

In *Johnson v. Williams*, 14 Pac. Rep., 537, the supreme court of Kansas decided that a person holding only by quit-claim deed from his immediate grantor, whether he is a purchaser or not, is not a *bona fide* purchaser. In sup-port of which a number of authorities are cited, and to which are added a number of others by a note appended to the decision.

There are many nice distinctions growing out of the application of this rule. In some states it is held that a purchaser by a quit-claim deed cannot be a purchaser without notice; that he takes only such interest as the grantor might lawfully convey, and cannot acquire any rights that the grantor did not have in the premises. But in others it is held that the grantee in a quit-claim deed, which is recorded, will take precedence of one claiming under a prior unrecorded deed of which the purchaser had no notice.

In Martindale on Conveyancing, at page 56, the uniform application of the rule is seriously questioned, the author saying: "We can conceive of no sufficient reason why one who is actually a *bona fide* purchaser for value, without notice, should not be so regarded, even though he receives a quit-claim deed." The subject *is further discussed* by the same author, at page 285. See also an exhaustive article, "Upon the nature and effect of a quit-claim deed," 12th Central Law Journal, 127.

In *Watson v. Phelps*, 40 Iowa, 482, it was held that, "the grantee of a quit-claim deed is not to be regarded as a *bona fide* purchaser without notice of outstanding equities."

The land in controversy in that case was purchased after a sale for taxes, by one Dickson, who transferred the certificate of sale to Eldridge, and a treasurer's deed was made to him. Eldridge then conveyed by quit-claim deed to the defendant, Patterson. At the time of the sale of the real estate for taxes, there was a fraudulent combination of bidders, which it was conceded would defeat the title, unless Patterson could be protected as an innocent purchaser. It was held that he could not be so protected, and that his deed was void as against the holder of the legal title. These are some distinctions between that case and the one at bar.

In *Chapman v. Sims*, 53 Miss., 154, the doctrine contended for by plaintiff was carefully considered, and many

·of the cases so holding were reviewed and seriously ques-tioned.

In *Pettingill v. Devin*, 35 Iowa, 344, a bond for a deed had been executed from Biggs to Coffin, and was neither acknowledged ·nor recorded. Biggs afterwards executed a ·quit-claim deed to Devin, and it was held that, although he acquired his interest by a quit-claim deed, he was a purchaser, who purchased for a valuable consideration and without notice of the existence of the bond ; and it was said that " a purchaser who acquires title by a quit-claim takes precedence of one holding under a prior unrecorded deed, ·of which he had no notice," citing *McConnel v. Reed*, 4 Scam., 117 ; *Fash v. Blake*, 38 Ill., 363; *Rowe v. Beckett*, .30 Ind., 154. See also *Martin v. Morris*, 22 N. W. .Rep. (Wis.), 525.

While we concede it to be the general rule, as stated by the authors above cited, that a purchaser who acquires title .by a quit-claim deed is not a *bona fide* purchaser without notice of existing equities, yet we think it is sufficiently shown that there are exceptions to this rule, and that this case falls within the exception.

There is no doubt that the person who represented plaintiff was his attorney, with full authority to represent him at the time of the sales under execution. It is shown that plaintiff was notified, after some of the transactions referred to in the record had occurred, that his attorney was unfaithful to him, and as expressed by some of the witnesses, "had gone in with Atkins," the judgment cred-itor, and that "they were getting away with his property." The employment was made, doubtless, with full knowledge ·of the methods usually adopted by his counsel, in the transaction of business; but even after having sufficient notice, from personal knowledge and acquaintance, and from reports which had reached him, and the statements made to him as to the manner in which the business was being conducted, he continued the attorney in his employ

and permitted him to go on as his representative.   It is true that he testified that, at the time of the receipt of the information, he was in Ohio, and could not then return home.   But by his long acquaintance in the city of Lincoln, and his knowledge of the members of the bar in said city, he could, by correspondence or otherwise, have caused an investigation and prevented the confirmation of the sale, or if not its confirmation, he could, within the statutory period, have procured the sale to be set aside, and arrested the title before it passed to defendants.   No steps of the kind seem to have been taken by him, and he must be held to be bound by the action of his attorney while under his employment.

While defendants may not be purchasers without notice under their deeds, so far as the portion excepted from the warranty is concerned, yet we think it clear that plaintiff cannot now question their title, and in this collateral way attack the proceedings of the sheriff, and of the district court in confirming the sale and ordering the execution of the deed.

The decree of the district court will be affirmed, except so far as it affects the two tracts of land described and bounded, and hereinbefore referred to.   With reference to those tracts, the decree is reversed, and a decree will be entered in this court quieting the title of plaintiff.

DECREE ACCORDINGLY.

THE other judges concur.