Connell v. Galligher.

W. J. CONNELL, APPELLEE, V. ELIZABETH GALLIGHER ET AL., APPELLANTS.

FILED APRIL 26, 1893.    No. 4780.

1. **Deeds:** DEFECTIVE CERTIFICATE: EFFECT AS BETWEEN GRANTOR AND GRANTEE.    A deed in other respects sufficient and regular is effective, as between the grantor and grantee therein, to pass complete title even though executed in a foreign state it is there acknowledged before only a purported justice of the peace as to whose genuine signature, official character and power, there is no accompanying certificate of a proper officer having a seal.

2. ———: ———: ———: DECREE TO REMEDY DEFECT: STRANGERS TO SUIT.    A decree obtained for the purpose of obviating the objection that the acknowledgment of a deed was not shown to have been proved by the certificate of a duly authorized officer is operative only against parties to the action and others in privity with such parties.    Whatever rights are held by a stranger to such a suit are unaffected by such a decree.

3. **Summons:** OFFICER'S RETURN: EVIDENCE TO IMPEACH.    To impeach the return of an officer of the due service by him of a summons, the evidence must be clear and satisfactory.

4. **Attorney's Appearance:** AUTHORITY: BURDEN OF PROOF.    Where want of authority to appear for a defendant against whom

judgment has been rendered is alleged to invalidate such judgment, the burden of proof of such want of authority is upon the party asserting the same.

5. **Power of Attorney:** Conveyance of Real Estate: Description. In a power of attorney to convey real property the true function of the description is not necessarily to identify the land, but may be only to furnish the necessary means of identification. If such description can be made complete by an examination of the public records, and the records of judicial proceedings clearly indicated in such description, it is a sufficient identification of the subject-matter of such power of attorney.

Appeal from the district court of Douglas county. Heard below before Tiffany, J.

*Gregory, Day & Day* and *George M. O'Brien,* for appellants.

*Connell & Ives, contra.*

Ryan, C.

The real property which is the subject-matter of this action is lot 6 in Smith & Griffin's addition to the city of Omaha. This lot is a part of the northwest quarter of section 28, in township 15 north, range 13 east of the 6th principal meridian. The opinion of the supreme court in *O'Brien v. Gaslin,* 20 Neb., 347, settled several questions as to lots 8, 9, and 12 in this same addition, thereby eliminating similar questions from this action. In the case just cited will be found an abstract of the title of the above described 80-acre tract, covering many of the conveyances hereinafter discussed, which it is not deemed necessary now to reproduce. To the understanding of the discussions hereinafter it is believed that supplementary to the reference to the above plat it will be sufficient to give the following description of the parties, their interests, the source of their claims, and their several contentions :

Augustus Graeter, Jr., was the owner of the whole 80-

acre tract on October 20, 1857. On that day he conveyed the undivided one-half of said property to James E. North, and the other undivided one-half he conveyed to Augustus Graeter, Sr. Each conveyance was by warranty deed, which deeds were recorded on the last date above named. James E. North, by warranty deed, on January 9, 1858, conveyed back to Augustus Graeter, Jr., the undivided one-half of said property of which he had been vested with title as above stated. On January 12, 1858, Augustus Graeter, Sr., executed a warranty deed to Augustus Graeter, Jr., for the undivided one-half of said property which he held by virtue of the conveyance aforesaid. This deed was executed in Ohio and acknowledged before a purported justice of the peace, and did not have a certificate of the proper certifying officer of the county where the acknowledgment was taken, under seal of his office, showing that the officer who took the acknowledgment was in fact the officer he assumed to be; that such certifying officer was acquainted with the handwriting of said justice of the peace, and believed his signature to be genuine, and that the execution and acknowledgment were according to the laws of the state wherein the execution thereof took place. A decree was relied upon to obviate these objections, to which further reference will be made hereafter.

In the suit of Wood v. Baugh, Dawkins, and Graeter a judgment was recovered against each of the defendants, including Augustus Graeter, Jr., upon alleged personal service of summons upon him, and the appearance of George B. Lake as attorney for the defendants. Under this judgment a sale of the premises was made to J. M. Woolworth, by whom a deed of the entire property was executed to Robert K. Woods, who, by power of attorney, authorized said J. M. Woolworth to convey the property therein irregularly described. (There arises upon this power of attorney a serious contention as to the sufficiency of the description of the property in respect of which the attorney

in fact was authorized to make conveyance.) Under this power of attorney J. M. Woolworth made conveyance of the entire property, whereunder, by *mesne* conveyances, the appellee W. J. Connell derives his title.

By reason of the defective proof of the power of the justice of the peace to take the acknowledgment as above noted, the appellants claim that Graeter, Jr., at the time of said sheriff's sale, owned only an undivided one-half of the property described in the sheriff's deed, the other half (as to which, as appellants insist, the defective acknowledgment avoided the deed) appellants maintain is held by the grantees of Graeter, Jr., by an equitable title, whatever may be held as to the other points upon which they rely. The appellants further contend that the court obtained no jurisdiction of Graeter, Jr., in the case of Woods v. Baugh, Dawkins, and Graeter, for that no summons therein was ever served on said Graeter, Jr., and because the appearance of Judge Lake for defendants in said cause was without authority from Augustus Graeter, Jr. As the result of these contentions appellants assert that the title to the whole property was held by Graeter, Jr., on December 9, 1874, by whom on that date it was by quitclaim deed conveyed to James E. North, by whom by quitclaim deed of date, March 16, 1886, Elizabeth Galligher derives whatever title she has to the premises aforesaid, and that by reason of the defects, hereinafter to be considered, in appellee's chain of title her title is unaffected by appellee's claim of title. To the proper settlement of these contentions it will be necessary to consider the following questions:

First—What was the effect of the failure to show the due execution of the certificate of acknowledgment of the deed of Augustus Graeter, Sr., to Augustus Graeter, Jr., and how far was this irregularity cured by decree?

Second—What jurisdiction had the court of Augustus Graeter, Jr., personally, when it rendered judgment in favor of Woods v. Baugh, Dawkins, and Graeter?

Third—Was the subject-matter of the power of attorney of Robert K. Woods to J. M. Woolworth so defectively described that, thereunder, said attorney in fact could convey no title?

1. The first question was in fact considered in *O'Brien v. Gaslin, supra,* which was an action of ejectment brought by Gaslin against the other parties to the suit. Plaintiff's chain of title, and consequent right of possession, in that case, could be made complete only by introducing in evidence the record of the deed, as to which there was no proof that the acknowledgment was taken by a justice of the peace authorized to take such acknowledgments. It was therefore held that as the record of the deed under such circumstances was a nullity and inadmissible against a subsequent purchaser of the land, it devolved upon the plaintiff to offer a deed properly certified as part of his chain of title, and until he did do this, the adverse party might rely upon his possession alone as a defense. Like the above, the case at bar was begun by ejectment simply for the possession of the property in dispute. On motion of the appellants it was upon equitable issues, which involved as well the title as the right of possession, tried as an equitable action. It well might be that under such circumstances the want of certification noticed would be of different effect in a cause wherein all questions of title were at issue, as compared with one wherein was involved only the right of possession, such right depending upon the introduction in evidence of a deed imperfectly proved as such. The decision of this case, however, does not require us to determine what if any difference should be observed, and no such determination will be attempted.

Appellants contend that at least the defect in the proof of due acknowledgment of the deed from Graeter, Sr., to Graeter, Jr., was to vest in Graeter, Jr., a mere equitable title, and that such a title could not be divested by the sheriff's sale made under the judgment rendered in the case

of Woods v. Baugh et al. This, it is claimed, results from the holding of this court that a judgment lien cannot attach to a mere equity. (*Nessler v. Neher*, 18 Neb., 649.) In *Rosenfield v. Chada*, 12 Neb., 25, it was held, however, that an equitable interest in real estate, coupled with actual possession, could be sold under an ordinary execution, and from the proofs adduced as to possession in this case by appellants, it would not be wholly without warrant to find such possession as would be necessary to bring this case within the rule in the last cited case upon appellants' own theory. But it is not believed correct to assume that by reason of the defective proof of the powers and acts of one who assumed to take, as an officer, the grantor's acknowledgment of the deed in question, an equitable interest in any way resulted by operation of this deed. An equitable interest is one that can be made available, effective, or sustained in a court of equity, is the definition given by Webster and Abbott. In *Harrison v. McWhirter*, 12 Neb., 155, it was held that neither acknowledgment nor recording is necessary to pass the title from the grantor to the grantee. As between Graeter, Sr., and Graeter, Jr., therefore, the deed as to which there was defective proof of acknowledgment operated to vest in the grantee whatever title was held by the grantor, in this case an undivided one-half of the real property in the deed described. The defect was simply as to proof of an incident to the due acknowledgment of a deed executed in another state. As between the grantor and grantee the contract of conveyance was complete when the deed was signed and delivered. Section 50, chapter 73, Compiled Statutes, provides that "every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." The deed under consideration was in form a warranty deed, from which no intent other than to convey all the interest of the grantor could be inferred. Therefore, it necessarily follows that

no mere equitable interest as distinguished from the legal title passed by operation of this deed.

To obviate the want of proof of the official capacity of the person who, as justice of the peace, made the certificate of acknowledgment of the Graeter, Sr., deed, and of the due execution of such certificate, the appellee, on December 3, 1886, filed his petition in the district court of Douglas county against the heirs of Augustus Graeter, Sr., who had meantime died; in which petition the appellee set forth the history of the execution of the deed from Graeter, Sr., to Graeter, Jr., with the failure properly to prove the facts necessary to render valid the acts of the alleged officer who certified to such acknowledgment, and after describing the *mesne* conveyances by which the title as alleged had vested in him, the appellee prayed that he be decreed the legal and equitable owner of the real estate involved, and that within a time to be fixed by the court the defendants be decreed to convey such real estate to him; that in default of such conveyance within the time required, the clerk of said court make such deed with the same effect as though executed by the defendants.

Service by publication was duly had upon all the defendants, who were non-residents of Nebraska, and in due time a decree by default was taken against each of them as prayed. The appellants contend that this decree and deed is not operative as to their rights, for the decree was against parties other than appellants, and with whom appellants were not in privity as to the property affected. The appellee insists that the decree was but a link in his chain of title, admissible as against a stranger, and that it cannot be attacked collaterally. In support of his contention the appellee cites *Barr v. Gratz*, 4 Wheat. [U. S.], 220; *Lessee of Buckingham v. Hanna*, 2 O. St., 551; *Den v. Hamilton*, 12 N. J. L., 109; *Baylor's Lessee v. Dejarnette*, 13 Gratt. [Va.], 152; *Barney v. Patterson*, 6 Har. & J. [Md.], 182; *Secrist v. Green*, 3 Wall. [U. S.], 744; *Gregg v. Forsyth*,

24 How. [U. S.], 180; *Freydendall v. Baldwin*, 103 Ill., 325; *Lathrop v. American Em. Co.*, 41 Ia., 549; Freeman, Judgments, sec. 416. Each of these cases merely recognizes the principle that, where the decree formed a link in the chain of title, it was neither more nor less *res inter alios acta* as to third parties than would be a deed supplying the necessary link. The deed under which appellant Elizabeth Galligher claims title was dated March 16, 1886, and was filed for record the same day. Let us suppose, now, that on the date when the above petition was filed, December 3, 1886, or on the day when the decree thereon was obtained, March 18, 1887, all the heirs of Augustus Graeter, Sr., had joined in a deed of the property to appellee, upon what principle could it be claimed that such deed would affect the rights of said appellant? And yet the authorities cited only sustain the proposition that the decree would operate to the same extent as would a deed, as furnishing a necessary link in the chain of title. In either case, as against whatever rights appellant Elizabeth Galligher then held, a decree or deed under the circumstances was not binding. If the action had been one to establish appellee's title as against Elizabeth Galligher and incidentally to prove the qualifications of the alleged justice of the peace to certify an acknowledgment of the deed, another question would have been presented. But to allow proof of title so as to affect the existing rights of one not a defendant, or in privity with a defendant, would be fraught with serious danger of rank injustice perpetrated under the forms of law.

The case at bar is, however, in effect, an equitable action to quiet, as against the appellants, the legal title which, as between the grantor and grantee, was vested in the grantee, under whom appellee claims his title. The judgment in case of Woods v. Baugh, Dawkins, and Graeter was rendered on the 1st day of November, 1859, from which date, if the court had jurisdiction to render such judgment, it became a

lien upon the property under consideration. Under this judgment there were two sheriffs' deeds, one of date August 14, 1861, the other of date January 22, 1870, each founded on the sheriff's sale made on March 15, 1861. The first of these sheriffs' deeds was recorded on August 14, 1861; the last on January 22, 1870. As against the title derived through these sheriffs' deeds, appellants claim by virtue of a deed executed by Augustus Graeter, Jr., to James E. North December 9, 1874, who conveyed to Elizabeth Galligher March 16, 1886. Each of these conveyances was by quitclaim deed. The holder of a title under a quitclaim deed is not a *bona fide* purchaser. (*Lavender v. Holmes,* 23 Neb., 345.) The effect of a quitclaim deed is only to pass the naked legal title of the grantor. It changes no equities. (*Lincoln B. & S. Ass'n v. Hass,* 10 Neb., 581.) Elizabeth Galligher is entitled to assert only such rights as Graeter, Jr., could if he had not conveyed, and it therefore results, if the execution sale aforesaid was effective to vest J. M. Woolworth with the title which we have already found was in Graeter, Jr., that, in the absence of any defect in his chain of title from Woolworth, appellee's title must be held superior to that of appellants.

2. This leads to the consideration of the objections urged as to the binding force of the judgment in favor of Woods as against Augustus Graeter, Jr., one of the defendants. The district court found that "in the action of Woods et al. v. Dawkins, Graeter et al., referred to in the defendants' answer and cross-bill, A. F. Graeter was duly served with summons in said action and appeared in the court, and that the court had jurisdiction in the action of the said parties thereto and the subject-matter thereof." This finding of fact might be sustained upon the presumption in its favor equally with that in favor of the special verdict of jury, yet, as it is earnestly combated, it will not be amiss upon appellants' invitation to examine fully the objections urged. The summons in the case of Woods et

al. v. Baugh, Dawkins, and Graeter was introduced in evidence, indorsed as served upon Baugh, Dawkins, and Graeter by delivering to each of them personally a true copy thereof on the 5th day of March, 1859. It was signed J. C. Reeves, sheriff, by R. Kimball. It was shown by extraneous evidence that at that time R. Kimball was deputy sheriff of Douglas county, Nebraska. The appellants introduced the testimony of Graeter, taken by deposition June 20, 1889, to the effect that he had never been served with summons in the case last named and had never employed or authorized the employment of an attorney to appear in said cause in his behalf. The testimony of six other witnesses, with more or less directness, is to the effect that at the time of said purported service Graeter was at or on his way to Pike's Peak; at any rate he was not in Douglas county. In addition to this there was given the testimony of one or more witnesses that Kimball, upon the above return being shown him, had said that the signature thereto was not his signature. In passing, it may not be amiss to remark that this is not shown to be admissible as evidence by the authorities cited by appellants, and we believe that it was inadmissible for lack of the very essential element, *that it was against Kimball's interest* at the time he made the statement. On the other hand the return itself was relied upon as the foundation for the judgment rendered about thirty years before, supplemented by the evidence of competent experts, who each swore unhesitatingly that the signature was that of Richard Kimball. In addition to this George B. Lake testified that he was duly employed on behalf of the defendants to appear for them in said suit, and that he did so for the purpose of delay, there being no meritorious defense. He did not undertake to say that he was specially employed by Graeter, but that the other defendants were copartners with Graeter, and he could say no more than that he was employed by some member of the firm—he could not say which. The judg-

ment was rendered November 1, 1859, and thereunder an execution sale was had, which was duly confirmed, and sheriff's deeds were issued pursuant thereto, and no question has been made as to the regularity and effectiveness of any of these proceedings until the lapse of over thirty years, and even now it is in a purely collateral proceeding.

A careful examination and consideration of the adjudged cases satisfy us that this attempt should not be successful. In one of them cited by appellants in support of their contention (*Murphy v. Lyons*, 19 Neb., 689) the rule is laid down that the decrees and judgments of a court of general jurisdiction and power are presumed to have been made in causes in which the court had jurisdiction until the contrary is proved.

In *Wyland v. Frost*, 75 Ia., 210, Rothrock, J., delivering the opinion of the court, said: "The return shows that the notice was personally served on the plaintiff and her husband on the 26th day of July, 1882, at Harlan, in Shelby county. The plaintiff and her husband, and others, testify that neither the plaintiff nor her husband was at Harlan on that day. None of the witnesses produced any record, memorandum, or circumstances tending to verify or support their testimony. Their statements are founded upon mere recollection, and suit was not commenced until about three years and a half after the judgment was rendered. On the other hand we have the return of the constable who made the service, and his testimony, in which he states positively that he made the service at the house of the plaintiff and her husband at Harlan on the day named in the return. He is corroborated by evidence that the notice was actually delivered to him for service on the morning of that day, and the plaintiff and her husband are contradicted in reference to incidental facts which tend to show that the claimed absence on the day of service was a mistake. A careful examination of the whole evidence in the case leads us to the conclusion that the district court cor-

rectly found that the evidence introduced by the plaintiff
is not of that clear, conclusive, and satisfactory character
required to overthrow the return of the officer. It has
been held in some jurisdictions that the only remedy for a
false return of service is an action upon the bond of the
officer claiming to have made the service. (*Slayton v.
Chester*, 4 Mass., 478; *Bott v. Burnell*, 9 Id., 96; *Messer
v. Bailey*, 31 N. H., 9; *White River Bank v. Downer*, 29
Vt., 332.) But conceding the rule to be otherwise for the
purposes of this case, we think that the evidence of the
plaintiff falls far short of establishing the falsity of the
return. Upon grounds of public policy, the return of the
officer, even though not regarded as conclusive, should be
deemed strong evidence of the facts as to which the law re-
quires him to certify, and should ordinarily be upheld,
unless opposed by clear and satisfactory proof. (*Jensen v.
Crevier*, 33 Minn., 372; *Starkweather v. Morgan*, 15 Kan.,
274; Wade, Notice, sec. 1380.)"

In *Randall v. Collins*, 58 Tex., this language occurs on
page 232: "But assuredly if equity will allow one who
has been guilty of no fault or negligence to contradict the
sheriff's return by parol ovidence, for the purpose of hav-
ing an unjust judgment by default set aside, we are of the
opinion that it should require the evidence to be clear and
satisfactory. It is not like an ordinary issue of fact to be
determined by a mere preponderance of testimony."

As to the effect of the appearance by Judge Lake, the
following language quoted from *Winters v. Means*, 25 Neb.,
242, is applicable: "Where the court acquires jurisdiction
solely by the appearance of an attorney, the party for
whom the appearance was made may, no doubt, deny the
authority of such an attorney, and if the appearance was un-
authorized, vacate the judgment. The want of authority,
however, should be clearly made to appear, and particu-
larly is this the case where the action is against a firm, one
of whose members long afterwards seeks to escape liability

on the ground of want of such authority. The proof on this point is not satisfactory, and does not clearly show want of authority."

An abundance of authorities could be cited in support of this proposition stated by the present chief justice, but in the same measure as that statement is authoritative it is conclusive. The conclusions inevitably resulting in respect to the jurisdiction of the court are, first, that as opposed to the recitations of an officer as to the time and mode of service of summons, the evidence to overcome the same, must be clear and convincing; second, that where want of authority to appear is alleged as against such appearance by attorney, the burden of proof of such want of authority is upon the party asserting the same. In this case neither of these requirements were satisfactorily met, and it therefore results that after the lapse of these many years Augustus Graeter, Jr., and those claiming title under him, must be held concluded by the judgment of the court against him and by such proceedings thereunder as were duly had.

3. In the order of discussion laid down in the earlier part of this opinion the next question for consideration is, whether or not the power of attorney from Robert K. Wood to J. M. Woolworth so defectively described the subject-matter thereof that, thereunder, said attorney in fact could convey no title.

In said power of attorney said subject-matter was described as follows: "Sixty-three acres of land near Omaha, in Douglas county, in said territory, title to which was by said Woods acquired by sale thereof on execution against one Augustus Graeter and others." The deed executed by sheriff Grebe to J. M. Woolworth described the property as "the west half of the northwest quarter of section twenty-eight (28), in township fifteen (15) north, range thirteen (13) east of the sixth principal meridian, situate in said county of Douglas, excepting therefrom seventeen

acres of said land, title to which never was in said defendants."

Appellants insist that the power to convey land must possess the same requisites as are necessary in the deed directly conveying the land, citing *Clark v. Graham*, 6 Wheat. [U. S.], 577, in support of this view. This principle is therefore accepted as correct, and we shall now examine the adjudicated cases confined as they are to deeds.

In Devlin, Deeds, sec. 1012, it is said that "the rule may be stated to be that the deed will be sustained if possible from the whole description to ascertain and identify the land intended to be conveyed."

Where the description alludes to facts beyond the deed, parol evidence may be offered, not to contradict the deed, but to locate the deed upon the land. (*Eggleston v. Bradford*, 10 O., 316.) It is undoubtedly essential to the validity of a conveyance that the thing conveyed should be described so as to be capable of identification, but it is not essential that the conveyance should itself contain such a description as to enable the identification to be made without the aid of extrinsic evidence. (*Stanley v. Green*, 12 Cal., 166.) As illustrative of the application of the principles above enunciated the following descriptions, and the opinions in which they have been approved, are set out: "All my right, title, and interest in and to any lands and tenements the title to which is in the said S. D. Munger, and in which I have any interest as being the wife of him, the said S. D. Munger." (*Munger v. Baldridge*, 41 Kan., 236.) "Also 960 acres of land, being the divided one-half of two tracts of land of 960 acres, out of patents 278, 279, granted by the state of Texas to A. B. Watrous, assignee of A. McDonald and J. Wishart, situate in Navarro county, Texas, on Richland creek, and set apart to George Butler by commissioners appointed by the district court of Navarro county March 19, 1869, recorded in county records, book D, p. 352." (*Harvey v. Edens*, 69 Tex., 420.)

"That certain piece or parcel of timber land lying and being about forty-five miles in a northerly direction from the town of Eureka,   *   *   *   and the said timber land being known as McLeod Wood ranch, and containing about 500 acres, more or less." (*Paroni v. Ellison,* 14 Nev., 60.) "One hundred acres lying in Carrituck township, near the head of Smith creek, it being the eastermost portion of the farm purchased from my brother, and known as the Russel land." (*Warren v. Makeley,* 85 N. Car., 12.) "All the right, title, interest, and claim of the grantor in and to the farm of J. A., deceased, in W. township." (*Bailey v. Alleghany Nat. Bank,* 104 Pa. St., 425.) "All my right, title, and interest in Sacramento City, Upper California, consisting of town lots and buildings thereon." (*Frey v. Clifford,* 44 Cal., 342.) "All our right, title, and interest, and all real estate which we own or have claim to, situate in Belfast, situated in said county of Waldo, and particularly all that belongs to us as the heirs or legal representatives of Andrew Bird, formerly of Belfast, now deceased." (*Bird v. Bird,* 40 Me., 398.)

As was said in *Works v. State,* 120 Ind., 119, the true function of the description is not to identify the land but to furnish the means of identification, and this is done by the description here challenged. It furnishes the means of making the description certain, and that which can be made certain is certain. No question is raised as to the sufficiency of the description adopted by the attorney in fact in the deed by him as such executed, it therefore results from the foregoing considerations that the description of the subject-matter of said power of attorney must be deemed sufficient—the recital, that the title to the land had been by said Woods acquired by sale thereof, not being so misleading as to render inapplicable the principles above discussed.

The foregoing discussion covers all the questions which arose upon the record claim of title of each of the parties to this action. There was a large amount of evidence di-

rected to the appellants' claims founded upon the occupancy, cultivation, use, and possession of the premises in dispute, but as these questions were settled as facts by the findings of the district court upon conflicting testimony, they must stand as should the special verdict of a jury on the same propositions. They, therefore, will not be inquired into in this court. In the district court the appellants were found entitled to one undivided fourteenth part of the lot in controversy, as to which finding no complaint is made by appellee. It was rendered unnecessary, therefore, to inquire into the derivation or history of this fractional interest, hence it has not before been referred to, or commented upon. From the foregoing considerations it results that the judgment of the district court is in all respects

                                          AFFIRMED.

RAGAN, C., concurs.

IRVINE, C., as district judge, having passed upon another banch of this controversy, took no part in the consideration or decision of this case.