PINNACLE ARABIANS, INC., Plaintiff-Appellee, v. WILLIAM SCHMIDT, a/k/a Bill Schmidt, Defendant-Appellant (Katie Schmidt *et al.*, d/b/a Schmidt Arabians, *et al.*, Defendants).

Second District   No. 2—94—1372

Opinion filed August 12, 1995.

William Schmidt, of Streamwood, appellant *pro se.*

David R. Gervais, of Crystal Lake, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, William Schmidt, appeals the circuit court's order granting the petition of plaintiff, Pinnacle Arabians, Inc., to register in McHenry County a Canadian judgment against defendant. Defendant contends that the Canadian court lacked personal jurisdiction over him and that the judgment was obtained fraudulently.

In December 1992, plaintiff filed suit in the Court of Queen's Bench of Alberta, Canada, against William Schmidt, Katie Schmidt, Katie Schmidt and William Schmidt carrying on business as Schmidt Arabians, and Schmidt Arabians. Plaintiff alleged that defendants breached a contract for the purchase of horses from plaintiff. The record reflects that Katie Schmidt was served personally while defendant was served by abode service upon Katie Schmidt.

Defendant and Katie Schmidt, his wife, filed a *pro se* "Statement of Defense" on February 8, 1993. Subsequently, Molstad Gilbert, a firm of Canadian solicitors, filed an appearance, an "Amended Statement of Defence" and a counterclaim, purportedly on behalf of all defendants. The "Amended Statement of Defence," *inter alia,* raised the defenses that defendant was not connected with the business of Schmidt Arabians and was not a party to the contract.

According to a certificate issued by the Canadian court, "An application for summary judgment was heard on May 18, 1993, the Defendants appearing." The court granted summary judgment to plaintiff against all defendants for $36,915.89 U.S. Apparently, no appeal was taken from this judgment.

On May 26, 1994, plaintiff petitioned the circuit court of McHenry County to register the foreign judgment. Once again, Katie Schmidt was personally served with the petition to register the foreign judgment, while defendant was served by substituted service. Oliver, Close, Worden, Winkler, Greenwald & Maier purportedly entered an

appearance on behalf of all defendants. That firm was later granted leave to withdraw.

Defendant obtained new counsel and filed a petition to vacate the judgment. Defendant's affidavit was attached to the petition. In it, defendant asserted that he had no connection whatsoever with Schmidt Arabians, but rather it was a corporation of which his wife was the sole stockholder and officer. Defendant never entered into any contract with plaintiff and was never in Canada in connection with this or any other matter involving plaintiff. Defendant was not served with any papers in connection with the Canadian lawsuit and did not retain an attorney to represent him in Canada or consent to the entry of judgment against him. Defendant was never served in connection with the petition to register the foreign judgment. The attorneys purportedly representing his interests in the registration action were not authorized to do so.

The court conducted a hearing on defendant's petition. According to the bystander's report of that hearing, defendant's testimony was substantially similar to his affidavit. However, on cross-examination, defendant admitted that he owned property in Illinois and that he was aware that there were horses on that property which came from plaintiff. Defendant also had offspring from those horses. He admitted that he and Katie Schmidt had a joint bank account, but was unaware that plaintiff had received a check drawn on the joint account in payment of the judgment.

The court admitted plaintiff's exhibits into evidence without objection. These included copies of the statement of defense and "Amended Statement of Defence" filed in the Canadian action, both of which purportedly contain defendant's signature. Also included was a magazine advertisement for a stallion that was owned by:

"SCHMIDT ARABIANS
Bill Schmidt
28 W 224 Rosevelt [sic] Rd.
Winfield, IL 60190."

An excerpt from another magazine contains a brief description of Schmidt Arabians and refers to "the Schmidt's."

The court also admitted into evidence the supplementary affidavit of Robert A. Bradburn. Bradburn avers that he is plaintiff's shareholder and director. He further states:

"I advised Katie Schmidt that I would not deal with a trade name or a corporate entity and was advised by Katie Schmidt that Schmidt Arabians was a trade name operated by herself and her husband, William Schmidt, and I was instructed to put in on the Bill of Sale, Katie Schmidt and William Schmidt DBA (meaning doing business as) Schmidt Arabians.

4. That historically, Mr. Schmidt and his former wife, Pam Schmidt, also carried on business as Schmidt Arabians and I was advised that Schmidt Arabians was a trade name for Katie Schmidt and William Schmidt and at the time of the documentation being completed for this sale, I advised Katie Schmidt and William Schmidt that I would not deal with a corporate entity and must deal with the individuals and was at that time was [sic] given the names, Katie Schmidt and Bill Schmidt.

5. That I am the President of the Arabian Incentive Foundation Inc. and historically when various horses were nominated by the Schmidts DBA Schmidt Arabians, the member nominator is always William Schmidt, with a designation that prize monies go to William Schmidt.

\* \* \*

8. That although the bulk of my dealings have been with Katie Schmidt, it was always known to me, believed by me and represented to me that the owners of Schmidt Arabians were William Schmidt and Katie Schmidt during the course of this transaction.

9. That William Schmidt's daughter from a previous marriage came to see the horses in Alberta for their inspection and signed the contract. Katie Schmidt advised me that William Schmidt was breeding the horses that had been purchased in 1992."

The court denied defendant's motion to vacate, finding that defendant failed to produce sufficient evidence to support his petition. Defendant timely appealed. The other defendants are not parties to this appeal.

Defendant first contends that the court erred in registering the Canadian judgment because the foreign court lacked personal jurisdiction over him. Defendant maintains that he lacked sufficient minimum contacts with the province of Alberta to subject him to jurisdiction in that forum. Furthermore, according to defendant, the general appearance allegedly filed on his behalf was ineffective to confer jurisdiction because the Canadian lawyers were not authorized to appear for him.

■ The Uniform Foreign Money-Judgments Recognition Act (the Act) (735 ILCS 5/12—618 et seq. (West 1992)) provides that a foreign judgment which is final and enforceable where rendered is conclusive between the parties and is enforceable in the same manner as the judgment of a sister State which is entitled to full faith and credit. (735 ILCS 5/12—620 (West 1992).) However, a foreign judgment is not conclusive if, inter alia, the foreign court lacked personal jurisdiction over defendant or if the judgment was obtained by fraud. (735

ILCS 5/12—621 (West 1992).) There is a strong presumption that the rendering court had jurisdiction, and it is defendant's duty to rebut the presumption. *Ace Metal Fabricating Co. v. Arvid C. Walberg & Co.* (1985), 135 Ill. App. 3d 452, 457; *Paine, Webber, Jackson & Curtis, Inc. v. Rongren* (1984), 127 Ill. App. 3d 85, 90.

■ A general appearance waives all objections to personal jurisdiction and subjects the party to the authority of the court. (*J.C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, 647.) Moreover, where an attorney appears of record for a party, it is presumed that the appearance is authorized by that party, although the presumption is not conclusive. *Gray v. First National Bank* (1944), 388 Ill. 124, 129; *Zych v. Jones* (1980), 84 Ill. App. 3d 647, 651.

In *Vrozos v. Sarantopoulos* (1990), 195 Ill. App. 3d 610, the court reviewed the registration of a Canadian judgment. The court noted that the appearance filed on defendant's behalf in the Canadian proceeding "appears to satisfy" the requirements of the Act. (*Vrozos,* 195 Ill. App. 3d at 620.) In that case, as here, defendant claimed that the appearance was unauthorized. Since the appellate court had already determined to vacate the lower court's order on other grounds, it did not consider this question.

In fact, very few cases have considered the question of the quantity of proof required to overcome the presumption that an attorney's appearance is authorized by the purported client. In *Gray v. First National Bank* (1944), 388 Ill. 124, the law firm representing other defendants admitted that it was not authorized to represent its purported client in the action in question. Similarly, in *Bell v. Farwell* (1901), 189 Ill. 414, the named plaintiff alleged that he had no knowledge of the suit brought in his name, did not authorize any suit against defendant, did not pay any expenses in conjunction with the case, and had no claim against defendant. In addition, the attorneys for an assignee of the contract on which the suit was based admitted that they "[did] not pretend to be acting in the interest of the nominal plaintiff." *Bell,* 189 Ill. at 420.

The only case disclosed by our research with facts similar to this one is *Connell v. Galligher* (1893), 36 Neb. 749, 55 N.W. 229. In that case, one of the parties, Augustus Graeter, sought to repudiate a judgment entered 30 years before against him and several of his partners. He testified that he had never authorized an attorney to appear on his behalf in the prior case. The attorney could not recall whether he was specifically hired by Graeter, but testified that he was employed by some member of the firm. The court held the evidence insufficient to establish a lack of authority by the attorney. *Connell,* 36 Neb. at 760-63, 55 N.W. at 233.

In this case, there was no evidence of the circumstances surrounding the hiring and appearance of the Canadian solicitors in the underlying action. The solicitors themselves did not testify. The only evidence consisted of defendant's denial that he authorized that firm, or any other, to represent him in the Canadian action and that he was in fact unaware of the case until shortly before he made his appearance in the McHenry County proceeding.

■ Defendant contends that the trial court erred by disregarding his uncontradicted testimony on this point. We disagree. The court properly could have found it incredible that defendant's wife entered into the contract with plaintiff, received summonses in the Canadian action, arranged for the (unsuccessful) defense of that action, forged defendant's name on several documents, made payments pursuant to the judgment from the parties' joint checking account, received summonses in the McHenry County proceedings, and arranged for the defense of that action, all without her husband's knowledge. We note that the "Amended Statement of Defence" raised defenses peculiar to defendant, including the allegation that he was not a party to the contract, and that defendant's purported signature appears on the statement.

Moreover, defendant's testimony on other important points was impeached. For example, defendant testified that he had no connection whatsoever with Schmidt Arabians. However, the supplementary affidavit of Robert A. Bradburn lists in some detail defendant's involvement with Schmidt Arabians. Some of these activities predate his marriage to his current wife. Magazine advertisements referred to defendant's involvement with the business.

This evidence could support a finding that defendant and his wife were essentially partners in Schmidt Arabians. Defendant's evidence fails to negate the possibility that Katie Schmidt was his agent for carrying on the partnership's business. (See 805 ILCS 205/9(1) (West 1994) (every partner is an agent of the partnership for the purpose of its business); *cf. Connell v. Galligher* (1893), 36 Neb. 749, 55 N.W. 229.) Although defendant testified that the business is presently operated as a corporation, he did not state when the business was incorporated. It is clear from Bradburn's affidavit and the face of the contract that the contract was not made with a corporation. For these reasons, the trial court did not err in finding that defendant failed to rebut the presumption that the Canadian solicitors' appearance was authorized. The trial court was in the best position to assess the credibility of the witness and weigh the evidence. (*In re Estate of Maslowski* (1990), 204 Ill. App. 3d 379, 384.) Since defendant entered a general appearance in the Canadian proceeding, the court acquired

personal jurisdiction over him. Thus, we need not address defendant's contention that he lacked sufficient minimum contacts with Canada to subject him to jurisdiction there.

■ Defendant further contends that the Canadian judgment was procured through fraud. A party may challenge the registration of a foreign judgment if it was procured by fraud. (*All Seasons Industries, Inc. v. Gregory* (1988), 174 Ill. App. 3d 700, 704.) The "extrinsic fraud" which may prevent recognition of a foreign judgment is that which prevents the court from acquiring jurisdiction or gives it merely colorable jurisdiction. Extrinsic fraud occurs where " 'the unsuccessful party has been prevented from exhibiting fully his case *** as by keeping him away from court *** or where the defendant never had knowledge of the suit.' " *Falcon v. Faulkner* (1991), 209 Ill. App. 3d 1, 13, quoting *United States v. Throckmorton* (1878), 98 U.S. 61, 65-66, 25 L. Ed. 93, 95.

■ Here, there is simply no evidence that the Canadian judgment was procured fraudulently. Defendant does not dispute that he was properly served by substituted service. (See 735 ILCS 5/2—203(a)(2) (West 1994).) Defendant was represented by counsel who raised all the defenses which defendant now claims are applicable. As we have already determined, the evidence supports the conclusion that the attorneys were either authorized by defendant to represent him or were hired by his wife as his agent. Defendant does not even begin to speculate why his wife might attempt to defeat his interest in the Canadian action without his knowledge. For these reasons, the trial court did not err in rejecting defendant's allegations of fraud in the procurement of the Canadian judgment.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McLAREN, P.J., and BOWMAN, J., concur.