VERONA UNANGST, APPELLANT, v. LINUS E. SOUTHWICK, APPELLEE.*

FILED NOVEMBER 21, 1907.  No. 14,907.

1. **Process: RETURN: IMPEACHMENT.** There is a strong presumption that the return of an officer to a writ served by him is true, but the same may be impeached in a collateral proceeding by clear and convincing evidence.

2. **Mortgages: FORECLOSURE: REDEMPTION.** Defendant, through his agent, for a valuable consideration, promised not to purchase a mortgage upon plaintiff's homestead nor to interfere with plaintiff's purchase thereof. Afterwards, in violation of his agreement, he purchased the mortgage, and upon foreclosure of it bought the land. *Held*, That plaintiff, who was not served with notice of the foreclosure suit, is entitled to redeem by the payment to defendant of the amount paid for the mortgage, with interest at 7 per cent. per annum.

3. **Vendor and Purchaser: DURESS.** Evidence examined, and *held* insufficient to show that plaintiff's contract to convey land in settlement of her husband's indebtedness was secured by duress.

APPEAL from the district court for Logan county: HANSON M. GRIMES, JUDGE. *Affirmed in part.*

*H. M. Sullivan,* for appellant.

*Hoagland & Hoagland,* contra.

EPPERSON, C.

In 1899 or 1900, the plaintiff's husband, George T. Unangst, purchased of Harris & Company certain cattle, giving his notes secured by mortgage upon the cattle. Harris & Company sold their notes and mortgage to the

* Rehearing allowed.  See opinion, p. 119, *post.*

First National Bank of Friend, Nebraska, and guaranteed payment. The indebtedness was renewed from time to time by and in the name of Harris & Company, but remained the property of the defendant bank. August 11, 1903, the time for the payment of the indebtedness was extended for 90 days and additional security given upon personal property and real estate. One hundred and sixty acres of the land mortgaged soon thereafter became Unangst's homestead, which was incumbered by a prior mortgage of $600. August 14, 1903, the defendant bank brought three replevin actions against different parties to recover personal property alleged to have been included in the bank's mortgage, and four complaints were also filed by defendant before a magistrate, charging Unangst with feloniously selling a portion of the mortgaged property. Unangst waived preliminary hearing upon these charges and gave bond for his appearance. Soon after the institution of these several suits, negotiations were begun for a settlement, which was consummated about October 20, 1903, but was not reduced to writing. The replevin actions were dismissed. The defendant bank surrendered the notes given by Unangst and released its mortgage on the homestead. Unangst transferred certain personal property to the bank, and conveyed all of the land described in the mortgage, except the homestead, and his wife, plaintiff herein, as a part of the settlement, conveyed to the bank 160 acres of land belonging to her. December 8, 1903, Southwick, defendant herein and president of the defendant bank, instituted an action to foreclose the prior $600 mortgage upon the homestead, which mortgage had been assigned to him. A decree of foreclosure was entered, under which the land was sold to Southwick and the sale, over the objections of the defendant, George Unangst, confirmed. Plaintiff herein, the wife of the said George Unangst, began this action August 3, 1905, and seeks to redeem the homestead from the $600 mortgage foreclosed by Southwick, alleging that, as part of the agreement of settlement, defendant promised not to pur-

chase the mortgage foreclosed; that defendant purchased the same contrary to their agreement, and paid therefor only $200; that plaintiff was not served with summons in the foreclosure suit; and plaintiff asks that she may be permitted to redeem on the payment of $200. She also seeks to set aside the transfer of her land to the defendant Southwick, alleging, in substance, that she conveyed the same because of the criminal prosecutions instituted against her husband and defendant's promise to discontinue the same upon settlement; that the criminal actions were instituted for the purpose of extorting money and property in excess of the amount due, and, further, in consideration of the defendant's promise not to interfere with and prevent her purchase of the first mortgage upon the homestead. The judgment in the lower court was for the defendant, and plaintiff appeals.

As to the homestead: Defendant contends that the foreclosure suit settled the question here in controversy; and that the sheriff's return to the summons may not be collaterally assailed. This question has been settled by this court. In *Wilson v. Shipman*, 34 Neb. 573, it is held: "The return of an officer on a summons that he had personally served a copy of the same on the defendants may be contradicted and disproved by the defendant; but it must be clear from the evidence and circumstances that the return is untrue, otherwise it is the duty of the court to sustain it." It is true the summons therein was issued by an inferior court, but in announcing the rule no distinction is made between a summons of an inferior court and one of a court of general jurisdiction. In *Holliday v. Brown*, 33 Neb. 657, 34 Neb. 232, a summons of a district court was assailed in an action upon the judgment based thereon, and it was held that a party not served was not bound thereby. See *Campbell Printing Press & Mfg. Co. v. Marder, Luse & Co.*, 50 Neb. 283. These decisions we think are right and should be adhered to. The return of the sheriff shows that the summons here in controversy was served personally upon the plaintiff herein. There is

a strong presumption that the return of the officer is true, and it cannot be impeached except by clear and convincing evidence. At the time of the purported service, the sheriff had for service the summons in the foreclosure suit and also a notice for the appointment of a receiver. The sheriff testified that he handed a copy of each paper to the plaintiff in the presence of her husband and one other witness. The husband and the other witness corroborate the plaintiff, who testified that the sheriff handed to her a copy of the notice for the appointment of the receiver, but no copy of the summons. Upon all the evidence, the trial court found that the summons was not served upon the plaintiff herein, and we consider such finding fully sustained by the evidence.

There is a conflict in the evidence as to the terms of the settlement made by the parties. Defendant had a mortgage on the homestead and on 320 acres of other land, and also upon considerable personal property. It was the intention of all parties that plaintiff and her husband should settle the latter's indebtedness to defendant by conveying a part of the property. At the time of the settlement all parties knew that the $600 first mortgage upon the homestead could be satisfied for $200. It appears from plaintiff's evidence that prior to the consummation of the settlement she learned that defendant Southwick had negotiated for and arranged to buy the first mortgage, then in the hands of one Williams, to be transferred whenever the $200 was paid therefor. She and her husband, desiring to retain their homestead and knowing that defendant had negotiated for the mortgage, insisted that he should not purchase the mortgage, but permit them to redeem the same and take the homestead free from defendant's mortgage; that plaintiff, to save her homestead, deeded 160 acres of her own land to the defendant, which, with other lands, as above stated, was taken by defendant in full settlement of the indebtedness. The negotiations for settlement were conducted mostly for defendant by Mr. Gilchrist, who was in the employ of Harris & Com-

pany. Witness Hartzell testified that Mr. Gilchrist told him that it was the proposition to put Mrs. Unangst's place in the mortgage and throw the other place out, that she would turn over her place instead of that. Witness Bailey testified that Gilchrist told him after the consummation of the settlement that they (the defendants) had agreed to let the first mortgage alone. Defendant negotiated for the purchase of the $600 mortgage to protect his own lien. Before redeeming therefrom, his settlement with Unangst was complete and he needed no protection from the mortgage. Thereafter the adventure was but a speculation with him. He and his agent Gilchrist deny ever having said anything to the Unangsts about the $600 mortgage, and never agreed not to purchase. Be this as it may, he either violated his contract not to buy, or procured the settlement by wrongfully withholding from plaintiff and her husband the fact that he had negotiated for and intended to buy it, and thereby procure not only the 480 acres plaintiff was satisfied to convey, but in addition thereto the other 160 acres—their homestead. Defendant's attorney testified that on the final settlement defendant wanted a deed to this land to save foreclosure, and that "Mr. Unangst refused to deed that, and for the purpose of getting a settlement we cut that out of the proposition." Mr. Williams, who acted as agent for defendant Southwick in negotiating for the purchase of the $600 mortgage, and who was called as a witness by the defendant, corroborates the evidence of the plaintiff's husband, and contradicts the deposition of Gilchrist to the extent that there was a controversy between Gilchrist and Unangst as to the mortgage. At the time of the settlement Mr. Williams had the mortgage in his possession, and subsequently thereto turned it over to the defendant. And, further, Gilchrist told witness that he expected the defendant's negotiation for the mortgage would make trouble. This witness had told Unangst that he held the mortgage for Southwick upon the payment of $200. This fact, and the other circumstances indicating that defendants,

through their agents, knew that the Unangsts considered that they were saving their home farm, argues that the plaintiff's conduct in the settlement and her theory of the contract were reasonable and true. · It is apparent from the situation that the only object plaintiff herein would have in substituting her own land for the homestead was that the latter might be spared to her. The finding of the trial court as to this fact was also for plaintiff, and we are convinced from the evidence that Mr. Gilchrist, who was agent for defendant, as part of the consideration for the settlement and especially to procure for his principal the plaintiff's land which she conveyed to the defendant Southwick, promised that plaintiff and her husband should not only have a release of defendant's mortgage, but that defendant would not purchase the $600 mortgage. The trial court considered the facts insufficient to permit the plaintiff to recover; but good faith and honest dealing required the defendant to abandon all claim to the defendant's homestead and to the prior mortgage thereon. Defendant having purchased the mortgage in violation of the contract for settlement, and foreclosed the same and procured an order confirming the sale thereof, the plaintiff is entitled to redeem, and is entitled to an order quieting the title thereof in her husband upon the payment of defendant's actual expenditure in the purchase of the mortgage, with interest.

Plaintiff herein also seeks to set aside the conveyance of her land to the defendant, because a part of the consideration therefor was the dismissal of the criminal suits against her husband; and, further, because the fact that the criminal cases were pending and the alleged promise of defendant to dismiss amounted to duress. There is no merit in this contention. In the first place, plaintiff in this same action seeks specific performance of a part of the contract of settlement by asking affirmative relief based thereon as above shown, and to which she is entitled only upon an adjudication that the contract was legal. And again, the evidence shows that plaintiff's husband was as

active as defendant in bringing about a settlement of his indebtedness, and that he had no fear of a conviction on the criminal charge. It is not shown that defendant procured by the settlement any advantage other than the saving of the expense of foreclosing its mortgage. Neither is it shown that defendant procured the settlement by threats of criminal prosecution. The record contains no evidence that the pending criminal suits controlled the plaintiff's conduct, or that her mind was overcome by threats, or that any undue advantage was taken of her or her husband. At most, under plaintiff's evidence, she substituted her land for the purpose of preserving her homestead. Considering the first mortgage worth but $200—the price for which all parties knew it could be had—there was no substantial difference in the value of their interests in the two properties. This court has ever condemned the conduct of persons using the criminal code for their own financial advantage, but judicial condemnation is uncalled for here. It does not appear that defendant instituted the criminal cases for the purpose of collecting money, nor did he threaten to prosecute them in case the settlement was not had. She deeded her land for a legal and adequate consideration—the canceling of the liens against her homestead. In *Morse v. Woodworth*, 29 N. E. 525 (155 Mass. 233), cited with approval and quoted at length by this court in *Hargreaves v. Korcek*, 44 Neb. 660, it was held: "Where defendant, by such threats of arrest and imprisonment as would overcome the mind and will of an ordinary man, compels a settlement which plaintiff would not have made voluntarily, plaintiff, even though guilty of the embezzlement, may avoid such settlement on the ground of duress." In the opinion it is said: "The question in every such case is whether his liability to imprisonment was used against him, by way of a threat, to force a settlement. If so, the use was improper and unlawful; and if the threats were such as would naturally overcome the mind and will of an ordinary man, and if they overcame his, he may avoid the settlement." None of the elements of

duress is shown in the case at bar, and plaintiff is not entitled to have her deed canceled.

That portion of the judgment of the district court denying plaintiff the right to redeem the first mortgage for $200 should be reversed, and the cause remanded, with instructions to permit plaintiff to redeem from the sale of the homestead property by paying defendant the amount of his expenditure, to wit, $200 paid for the prior mortgage, with interest at 7 per cent. per annum from November 1, 1903, the date of the purchase.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, that portion of the judgment of the district court denying plaintiff the right to redeem from the first mortgage upon the payment of $200 is reversed, and the cause remanded, with instructions to enter a decree permitting plaintiff to redeem from the sale of the homestead property by paying defendant $200 paid by him for the prior mortgage, with interest at 7 per cent. per annum from November 1, 1903. In all other respects the judgment of the district court is affirmed, with costs in this court taxed against the defendant.

JUDGMENT ACCORDINGLY.

The following opinion on rehearing was filed June 4, 1908. *Former judgment modified and judgment of district court affirmed:*

1. Process: RETURN: IMPEACHMENT. The return of an officer cannot be impeached except by clear and convincing evidence.

2. Opinion Modified. The former opinion in this case, *ante,* p. 112, is modified.

EPPERSON, C.

Upon rehearing and further consideration of this case, I am convinced that a part of our former opinion, *ante,* p. 112, is wrong. This is an action to redeem from a

mortgage upon land owned by plaintiff's husband and occupied as a homestead. The land had been purchased at judicial sale by the defendant Southwick, who owned and foreclosed the mortgage. The sale had been confirmed and a deed issued to the purchaser. Plaintiff's alleged cause of action arose prior to the foreclosure. It is apparent that to recover she must prove that she had not been served with summons and had not appeared in the foreclosure case. The evidence bearing upon this question consisted of the sheriff's return of the summons showing personal service and his own testimony in support thereof. The plaintiff, her husband, and sister, who were present at the time of the service of the papers, testified that she was served only with notice of the application for the appointment of a receiver, and was not served with summons. At the same time and in the presence of the plaintiff all witnesses agree that both notice and summons were served upon the plaintiff's husband.

The error in our former opinion is the application to this case of the rule announced in the first paragraph of the syllabus. Similar evidence was held in *Wilson v. Shipman,* 34 Neb. 573, insufficient to impeach the officer's return to a court of inferior jurisdiction. The sheriff went to the home of the parties for the express purpose of serving the summons and the notice of the application for a receiver upon the plaintiff herein and her husband. It seems improbable that he would serve upon the plaintiff only the notice of the application for receiver and make his return showing the service of the summons upon her. He had the opportunity to serve it. In the summons, both the husband and wife were named as defendants. We fear that it would be a dangerous precedent to adhere to a rule which would permit an officer's return to be superseded by such evidence as this. It would offer an opportunity for the practice of fraud and perjury, and the due administration of justice might be considerably hampered by dishonest litigants, who, after making no response to the process of the court, would appear collaterally and defeat

the officer's return.   However, we do not charge such motives to the plaintiff, but the circumstances in this case strongly corroborate the sheriff's return.   Although the lower court found that the summons in the foreclosure suit was not served upon the plaintiff herein, we are now convinced that the evidence in support of such finding is not clear and convincing.   Again, it appears from the testimony of the plaintiff that at the time of the service of the summons and the notice that she saw and read the summons served upon her husband.   She had received notice of the application for the appointment of a receiver in the same case.   Thus, it appears that she received, directly from the process of the court, actual notice of the pendency of the suit.   The facts relied upon by the plaintiff herein should have been pleaded as a defense to the foreclosure suit, or would have entitled her to appear therein and enforce her rights to redeem.   She should have made use of that opportunity.

We therefore recommend that the former opinion be modified, as suggested, and that the judgment of the district court be wholly affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons above given, the former opinion in this case is modified, as suggested, and the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.