State of Nebraska, appellant, v. County of Kimball et al., appellees.

82 N. W. 2d 479

Filed April 26, 1957. No. 34093.

Clarence S. Beck, Attorney General, and Richard H. Williams, for appellant.

Heaton & Heaton, for appellees Scott.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The State of Nebraska filed an application on May 5, 1955, in the district court for Kimball County, the purpose of which was to acquire possession of Section 16, Township 16 North, Range 55 West of the 6th P.M., in Kimball County as that section is established by a survey made in accordance with the order of the district court for Kimball County entered in 1933. The resurvey revealed that a portion of land previously thought to lie in the north half section of Section 21 was actually a part of Section 16.

The defendants, Robert E. Scott and Anna R. Scott, by their answer filed in the present action in opposition to the State's application, insofar as pertinent to this appeal, alleged that the order of the court entered on December 7, 1933, was null and void for the reason that the service of process alleged to have been made upon these defendants in the city and county of Denver, Colorado, on the 12th day of June 1933, was in truth and fact never made; that the return of the deputy sheriff on said

service of summons was false; that these defendants were never notified of the pendency of said action filed in 1933 in Kimball County; and that the plaintiff, State, was not entitled to relief prayed for in its application. Defendants prayed that the State's application be dismissed.

The State filed a general denial in reply to the defendants' answer.

On May 2, 1956, trial was had to the court on the State's application, and evidence was presented by the parties. After the trial had concluded, the trial court found and decreed that there had not been due and proper service of process upon the necessary parties defendant at the time of the original hearing in 1933; that the order entered by the court at that time was null and void; and that the present application of the plaintiff should be dismissed. The court did dismiss the State's application.

The State filed a motion for new trial. The trial court overruled the motion for new trial, and from the order overruling the motion for new trial, the State appeals.

On June 7, 1933, the State filed its petition in the district court for Kimball County against certain named defendants. In its petition the State alleged that it was the owner in fee simple of Section 16, Township 16 North, Range 55 West of the 6th P.M., in Kimball County; and that the correct corners and boundary lines of said land had been in dispute for a number of years and the plaintiff desired to have them established and made certain. The State further alleged that the correct corners and boundaries were as established by a survey made in 1928 by H. B. Lawson, deputy state surveyor, pursuant to statutory procedure. The petition further alleged that R. Elmer Scott was the record owner of, and Anna R. Scott his wife was interested in, the northeast quarter of Section 21 in said township and range which adjoined Section 16 on the south.

While the petition sets forth interests of other persons

in connection with the subject matter involved in this action, any interest said persons so named in the petition may have had is not for determination in this appeal. We are concerned in this appeal only with the service had upon the defendants Scott.

The prayer of the petition was that the corners and boundaries of Section 16, Township 16 North, Range 55 West of the 6th P.M., in Kimball County be established by the court.

On June 7, 1933, affidavit was filed for service of summons out of state, showing R. Elmer Scott and his wife to be residents of Colorado and that summons could not be served upon them in the State of Nebraska.

We make reference to exhibit No. 1 which is as follows:

"Summons - Outside of State - District Court - Original

STATE OF NEBRASKA, )　　The State of Nebraska
　　　　　　　　　　) ss.　　Kimball County.
Kimball County　　　　)　TO THE SHERIFF OF
　　County　　　　　　　SAID COUNTY, GREET-
　　　　　　　　　　　　ING:

You are hereby commanded to notify R. Elmer Scott and Anna R. Scott, his wife Defendants that they have been sued by The State of Nebraska Plaintiff, in the District Court of the 13th Judicial District in and for the County of Kimball and that unless they answer on or before the 10th day of July A. D., 1933, the petition of said Plaintiff filed against them in the Clerk's Office of said Court, such petition will be taken as true, and judgment rendered accordingly. You will make due return of this summons on or before Monday, the 19th day of June, A. D., 1933.

　　SEAL　WITNESS MY HAND and seal of said Court at Kimball Nebraska, this 7th day of June A. D., 1933."

This summons was signed by the clerk of the district court.

"STATE OF NEBRASKA,)
                    ) ss.
Kimball County      )      I, C. A. Forsling sheriff
    County
in and for said County, and State of Nebraska, do hereby appoint the Sheriff or any Deputy Sheriff of Denver County, State of Colorado, to serve this writ." Signed by C. A. Forsling.

We make reference to the return on the reverse side of the summons which reads as follows:
"STATE OF Colorado,)
                    ) ss.
Denver County       )      R. I. Shores being first duly
    County
sworn, deposes and says that he is the identical person who was appointed by the sheriff of Kimball County, State of Nebraska, to serve the within summons, that he served the within summons on the within named R. Elmer Scott and Anna R. Scott, his wife, on the 12th day of June, 1933, by handing to and leaving with each of them in Denver County, State of Colorado, a true and certified copy thereof with all the endorsements thereon." Signed by R. I. Shores and subscribed and sworn to in the presence of a notary public on the 12th day of June, 1933. The fees for the service appear as follows: Service and return $2; mileage $1.05; and notary fees 50 cents.

On December 7, 1933, the trial court found that the plaintiff, the State, was the owner of all of Section 16, Township 16 North, Range 55 West of the 6th P.M., in Kimball County; and that the defendants owned the property adjoining thereto as alleged in the plaintiff's petition. The court further found that the corners recognized by Lawson as original government corners in the northeast corner, the southeast corner, and the southwest corner of Section 16 were not original government corners. The court further found that there were no government corners on Section 16, that the corners and boundary lines of Section 16 were those found by assum-

ing the northwest corner of Section 16 as located in said dependent resurvey to be an established corner and by assuming the original government corners as above mentioned to be the only original government corners within said township and establishing the corners and boundaries of said Section 16 under such assumed state of facts according to the rules of government surveys in effect on that date. The court adjudged and decreed that the boundary line of Section 16 be fixed and adjudicated according to its findings; and that if the plaintiff should locate upon the ground the boundary lines as adjudicated, it might, upon such notice to the defendants, or any of them, as the court might direct, be placed in possession of any part of Section 16 as defined, which was occupied by the defendants.

The result of the resurvey of 1954 was to locate Section 16 so that the boundary lines included approximately 40 acres of land that under the 1928 survey had been a part of Scotts' quarter section. As between the 1928 and 1954 surveys, the Scotts would be deprived of approximately 40 acres of the area of their quarter section of land.

The record discloses that it was stipulated by the parties that the survey made by Hugh Dillon, the State Surveyor, filed and made a part of the State's application in this case, was in direct accord with the findings of the district court for Kimball County and the judgment entered therein December 7, 1933.

It was stipulated that exhibit No. 1, which purports to be the original summons, outside of state, issued for service upon R. Elmer Scott and Anna R. Scott, his wife, in this action under date of June 7, 1933, and the return to such summons on the reverse side of exhibit No. 1 may be admitted and considered without objection in the action.

It was further stipulated that it was the contention of the plaintiff that the defendant Scott was in possession of 39½ acres of land claimed by the plaintiff as being a

part of Section 16; that this action was for the purpose of obtaining possession thereof; and that the defendants denied that the State was the owner of the said 39½ acres, or that said acreage belonged to Section 16.

At this point the State rested its case.

Paul Wilger testified for the defendants that he had lived in Kimball County since 1919, and was familiar with the north half of Section 21, Township 16 North, Range 55, Kimball County. He farmed the north half of Section 21 for Robert Scott whose land was the northeast quarter of Section 21, and farmed John Kelly's quarter section of land located in the northwest part of Section 21, at the same time he was farming a quarter section of land of his own. He further testified that Section 21 is just south of Section 16. He farmed this land from 1919 until 1937. In 1928, this witness personally submitted a petition to cause an election to have the township surveyed. The election was held, and as a result Lawson, a deputy state surveyor, made a survey. This survey located the boundary line and made no change in the boundary line which he had known since 1919.

Anna R. Scott, the wife of R. Elmer Scott and one of the defendants, testified that she had lived in Denver since 1921, and had never lived in Kimball County; that she was married to Mr. Scott in 1926; and that in 1933 she was employed by Doctors Hillkowitz and Freshman, and was also employed as registrar of the National Board of the Registry of Medical Technologists. She further testified that in June 1933, she and Mr. Scott were living in an apartment house located at 1801 Grant Street in Denver, and that she did not receive the summons, exhibit No. 1, at 1:40 p.m., June 12, 1933, which was on a Monday. She further testified that Mr. Scott was an auditor and worked at a different place than she did; that they prepared their breakfast in the apartment, did not go home for lunch, and generally had their evening meal together down town in Denver; and that she and her husband could not have been at the apartment at

1:40 on Monday, June 12, 1933. She testified further that she first heard about this case when the present tenant on their land in Kimball County came to Denver and called her husband, and her husband in turn called her. This was in 1955. She further testified that she worked in the doctors' office from 8:30 a.m. until 5 p.m., and many times after that hour did her other work. She could not account for the particular day of June 12, 1933, but testified that in all probability she and her husband ate dinner down town, the same as any other day. After finishing the evening meal, Mr. Scott would go back to his work and she would return to her work. In 1933, Mr. Scott was working independently as an auditor. She further testified that no deputy sheriff ever handed her a summons notifying her of an action pending in Kimball County; and that she was positive about this fact.

Robert E. Scott testified that he went to Denver in the latter part of 1922, and had resided there since that time; that he had been referred to as R. Elmer Scott; that he and Mrs. Scott own the quarter section of land here involved, that is, the northeast quarter of Section 21, which he acquired in 1918 or 1919; that in 1933, he was doing accounting work for various companies and had several accounts; and that at that time he lived at 1801 Grant Street in Denver. He testified as to the positions his wife held. In June 1933, he was carrying a heavy schedule, working on a supplemental audit for an insurance company in the Central Savings Bank Building. He and Mrs. Scott would leave their apartment around 8:30 a.m. They would only cook their breakfast in the apartment. He could not recall the details of what happened on any specific day as far back as June 1933, but it would be very improbable that he and Mrs. Scott would be at the apartment at 1801 Grant Street in Denver at 1:30 or 1:40 p.m., June 12, 1933. He further testified that no sheriff of Denver County handed him personally a summons with reference to an action pending in Kim-

ball County; and that he never received a summons of any kind. In 1955, he was called by a representative of an oil company who asked him to check with reference to an abstract concerning his land, and regarding the boundaries of the land involved in the law suit in 1933. This witness replied to such representative that there had never been any question about the boundary line as far as he knew, and that he believed there was an error in the abstract. The next time he heard about this matter, the tenant farming his land came to Denver, stopped at his office, and inquired of him why the surveyors were on his property in Kimball County. On May 20, 1955, Mr. Scott made a trip to Kimball to endeavor to find out what the trouble was. He testified that by coincidence that day the town paper had a notice of a hearing to be had in court. That was when he heard about the present action. He further testified that had he received a summons, he and Mrs. Scott would have gone to Kimball, as it is only 175 miles from Denver; and that the boundary line used by his tenant on his quarter section of land is the same as it was when he acquired it in 1918.

A. W. Freshman, a physician, testified by deposition admitted in evidence that his office is in the Metropolitan Building in Denver; that he is very well acquainted with Anna R. Scott and has known her since 1923, before he was a physician and afterwards; that she was employed by his senior partner who has since died, and this employment was at the same office he occupied; that she was his secretary and bookkeeper, and had been at this same office address since 1923 and worked every day except Sunday; that she is employed from 9 a.m., or before, until 5 p.m.; that he had no specific or particular recollection of the date of June 12, 1933; and that the reputations of Anna R. Scott and her husband for telling the truth and being reliable were excellent.

The deposition of John W. Blodgett, chief clerk in the

office of undersheriff of Denver County, Colorado, was admitted into evidence. This witness testified in regard to a certain document on file in his office described as a "jacket" containing the record of service upon the Scotts, which constitutes no part of the summons but is separate and distinct therefrom; that one of the documents in the jacket revealed that on June 12, 1933, at 1:40 p.m., service was made by deputy sheriff R. I. Shores on both R. Elmer Scott and Anna R. Scott; that from observation of the contents of the jacket, under the word "trips" this witness stated that it disclosed that in an effort to make the service three trips were made by a deputy sheriff to 1801 Grant Street, and one trip was made to 1255 South Pearl Street, both in Denver; that there is a tag, which is an exhibit, containing instructions to the deputy sheriff with reference to papers to be served; and that along with the papers to be served, as shown in this exhibit, information was given with reference to where R. Elmer Scott might be found. One such place was 1255 South Pearl Street where it was indicated he was employed as a bookkeeper for the Miracle Products Company, another was the address of his apartment, 1801 Grant Street or 333 East Sixteenth Avenue, and addresses where Anna R. Scott might be found. It required, in this instance, that service of the process must be personal. There were no other records directly concerning the service of process. On cross-examination Blodgett testified that the notation of trips written in pencil was intended as a memorandum to be completed by a deputy sheriff to enable him to make a record of the mileage he had traveled in attempting to make service, for the purpose of determining the fee to be charged; and that such memorandum is valuable to the office for computing the mileage to be charged for making the service. Another document within the jacket was a receipt for $3.55 from the clerk of the district court for Kimball County for payment of fees in connection with the service on the defendants

Scott. Another document in the jacket was a statement sent to the clerk of the district court for Kimball County requesting the payment of such fees. Blodgett further testified that no benefit for fees charged for making service inures to any person working in the sheriff's office, such fees are transmitted to the city and county treasurer.

The State makes the following assignment of error: The district court abused its discretion and erred in holding that there was sufficient proof, or proof of a clear and convincing nature, of a type to justify impeachment of the sworn return of the deputy sheriff of Denver County, Colorado.

The question involved in this appeal is whether or not the evidence is sufficient to impeach the return made on the summons.

In Westman v. Carlson, 86 Neb. 847, 126 N. W. 515, appears language that is applicable to the instant case and recognized in several cases in this jurisdiction, as follows: "The return of the officer is part of the judicial record of the case. It appears to be regular on its face. It shows in addition to the return that the sheriff charged mileage and fees for copies of the summons. He performed his duties under an oath of office and the penalties of an official bond. As to serving the writ and making the return, the presumption is that the officer performed his duty. Parker v. Starr, 21 Neb. 680. The return of a sheriff that he served a summons on defendant can only be impeached by clear and convincing proof. Connell v. Galligher, 36 Neb. 749; Unangst v. Southwick, 80 Neb. 119. This doctrine is essential to the integrity and permanency of judicial records." The court held: "Where the return of a sheriff recites that he served the summons, on which the return is indorsed, the presumption is that he performed his duty in making the service. * * * The return of a sheriff that he served a summons on defendant can only be impeached by clear and convincing proof."

As stated in Unangst v. Southwick, on rehearing, 80 Neb. 119, 116 N. W. 864: "We fear that it would be a dangerous precedent to adhere to a rule which would permit an officer's return to be superseded by such evidence as this. It would offer an opportunity for the practice of fraud and perjury, and the due administration of justice might be considerably hampered by dishonest litigants, who, after making no response to the process of the court, would appear collaterally and defeat the officer's return." However, we do not charge such motives to the defendants in the instant case. We do believe the circumstances in the instant case strongly corroborate the sheriff's return.

As stated in Janous v. Columbus State Bank, 101 Neb. 393, 163 N. W. 327: "When a judgment is attacked collaterally, or when a long time after the judgment is entered the correctness of the sheriff's return is assailed, great faith and credit must be given to the formal return of the officer."

In the case of De Lair v. De Lair, 146 Neb. 771, 21 N. W. 2d 498, this court said: "The rule is well established in this state that a sheriff's return on a summons is prima facie proof of the service therein indicated. * * * The return of an officer cannot be impeached except by clear and convincing evidence."

A review of cases above cited appeared in the De Lair case, together with other cases to which we make reference.

We stated in Connell v. Galligher, 36 Neb. 749, 55 N. W. 229: " 'Upon grounds of public policy, the return of the officer, even though not regarded as conclusive, should be deemed strong evidence of the facts as to which the law requires him to certify, and should ordinarily be upheld, unless opposed by clear and satisfactory proof.' " See, also, Wyland v. Frost, 75 Iowa 209, 39 N. W. 241; Campbell v. Harvard State Bank, 103 Neb. 562, 173 N. W. 587; Ault v. Stewart, 113 Neb. 47, 201 N. W. 639.

The defendants seek to impeach the service in the instant case on the grounds that the service of summons at the place and time shown on the record jacket in the office of the Denver County undersheriff could not have been had upon them on Monday, June 12, 1933, at 1:40 p.m., the reason being that each of the defendants was employed at a different place in Denver; that they were required to leave home early in the morning and return to their home late in the evening; and that neither the defendants nor any other witness could recall the events happening on June 12, 1933, some 23 years ago. The record jacket relating to service on the defendants at 1:40 p.m., June 12, 1933, is not conclusive, it is not sworn to with certainty that the defendants were so served. In any event, this record constitutes no part of the summons or the return thereon. The return of the summons itself does not give the alleged time of service. That testimony was taken from the record jacket. The clerk in the sheriff's office testified that the space referred to in the record jacket with reference to service of summons where the time was written in, was the place for the deputy to make memorandum for his convenience and the convenience of the office in computing mileage, and was not information that was part of the sworn statement of the return. In fact, the service of this summons, insofar as the return thereon is concerned, could have been had on the defendants at any place in Denver County, Colorado.

We conclude that the type of evidence submitted by the defendants is not that of clear, convincing proof necessary to impeach the sworn statement of an officer made in the course of his duty. The trial court had jurisdiction over the defendants and the subject matter of the action at the time the judgment was rendered on December 7, 1933. The trial court erred, as contended for by the State.

The State assigns as error and contends that a judgment which recites that the parties were present in

court, and where the record shows a service and return of summons sworn to by a deputy sheriff, under such circumstances the judgment is not subject to collateral attack to show that the court never had jurisdiction over the defendants. While there may be merit to this assignment of error, in view of our holding we deem it unnecessary to discuss it.

For the reasons given herein, we reverse the judgment of the district court and remand the cause with directions to enter judgment for the plaintiff, awarding to it all of Section 16, Township 16 North, Range 55 West of the 6th P.M., in Kimball County, Nebraska, as established by the resurvey which is a part of the record in this case.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., dissenting.

My disagreement with the court in this case relates not to the rules of law stated but to their applicability here, and if applicable, to the conclusion reached under them. Ultimately the question of the effect of undenied facts is involved.

The rules stated by the court all relate to the service of process by "an officer," the return made, and the presumptions that attach thereto.

The service here involved purports to have been made by a deputy sheriff of Denver County, Colorado. He was authorized to make service under an appointment of the sheriff of Kimball County which was directed to the sheriff or any deputy of Denver County. His authority was limited to the service of that writ. As such he was an agent of the sheriff of Kimball County and not an officer as the term is used in the rules upon which the court relies.

We had such an appointment in Nelson v. Robinson, 154 Neb. 64, 46 N. W. 2d 892. Without discussion we there treated the "private person" making the return as an "agent" of the sheriff of Scotts Bluff County.

This distinction runs through our decisions. For in-

stance in Forbes v. Bringe, 32 Neb. 757, 49 N. W. 720, there was an appointment of a special deputy to serve a writ. We referred to the return sworn to "by the person" who made the service.

The distinction has statutory recognition. Section 25-507, R. R. S. 1943, provides: "The summons shall be served *by the officer* to whom it is directed, who shall endorse on the original writ the time and manner of service. It may also be served *by any person* not a party to the action, appointed by the officer to whom it is directed. The authority of such *person* shall be endorsed on the writ. When the writ is served by a *person* appointed by the *officer* to whom it is directed, or when the service is made out of this state, the return shall be verified by oath or affirmation." (Emphasis supplied.)

Here the Legislature refers to the officer to whom the writ was directed. In this instance that officer was the sheriff of Kimball County. It refers to the "person" appointed by the "officer" to serve the writ. In this instance that "person" was the sheriff, or his deputy, of Denver County. Obviously the sheriff of Kimball County, as an officer, would have no authority to serve the writ in Colorado. Just as obviously his agent would have no authority as an officer to serve the writ.

The distinction does not rest upon the use of alternate words. A "person" serving the writ is required to verify his return on oath or affirmation. Why?

The reason appears in First Nat. Bank v. Anderson, 106 Neb. 204, 182 N. W. 1021, wherein we held: "In performing his official duty the sheriff acted under an oath of office and under the penalties of an official bond. There is a presumption that he performed his duty." The converse of the holding is that the "person" serving the writ is not an officer and not under oath and hence is required to verify under oath or affirmation. The converse of the holding is also that the presumption of the

performance of duty attaches to the "officer" and not to the "person."

Consistent with our statute and decisions other courts have held that the presumption in favor of the return of an officer does not exist where the return is made by a private person specially appointed to serve a writ. See, Simms v. Simms, 88 Ky. 642, 11 S. W. 665; Gardner v. Lincoln Bank & Trust Co., 251 Ky. 109, 64 S. W. 2d 497; Lynch v. West, 63 W. Va. 571, 60 S. E. 606.

Accordingly, it is my view that the court has decided this case on rules of law that are not applicable to the fact situation presented.

Now I go to the court's decision based on the rules it follows.

This action was originally brought in 1933. The Scotts were 2 of 12 individual defendants and there were also a corporate defendant and Kimball County—14 defendants in all. Two defendants, a husband and wife, answered.

The matter went to trial and judgment in 1933. In 1955 the State took its first action to enforce the judgment. The Scotts then answered, presenting the issue that the return of service by the sheriff's agent was false; that they had never been served; and that they had no knowledge of this action until 1955.

The parties made an investigation of the service at Denver. The person making the service was not found and was reported to be deceased. They did find the record in the office of the undersheriff of Denver which the majority recites. That record suggests the time of day of the purported service and either one of two places where the purported service was had. It suggests also that the person making the service did not know the Scotts and that he made three trips to the residence of the Scotts and one trip to the place of business where he had been advised Mrs. Scott was employed. It showed also that there was a charge of $2 for service, $1.05 for mileage, and 50 cents for a notary, or a total of $3.55.

The Scotts appeared at the trial, and submitted to examination and cross-examination. They established without contradiction, and with corroboration, that the service could not have been made at the time and place appearing in the records of the undersheriff's office.

The court brushes this evidence aside as not a part of the summons and return and anyway "the service of this summons * * * could have been had on the defendants at any place in Denver County, Colorado," insofar as the return is concerned. This holding rests on no fact suggested by the record. No one contended at the trial that service was had other than at one of the two named addresses.

The court overlooks the fact that there is a bridge between the records in the undersheriff's office and the return. On the return the charge for service, mileage, and notary is exactly the same as in the undersheriff's records. To that extent the court impeaches the veracity of the person making the return which the court accepts.

But I pass that.

Putting aside the undersheriff's records and the testimony of the Scotts relating thereto, there remains in this record evidence which cannot be brushed aside.

The Scotts also testified that they were not served with summons and had no knowledge otherwise of this litigation. That testimony was given in court, under oath, and subject to cross-examination. It stands unchallenged, uncontradicted, and unimpeached. It goes to service not only at "any place" in Denver County, but "any place" anywhere else.

So the court's decision then rests upon a consideration of the evidence of the Scotts which is found to be of no moment when weighed against the return of the person making the service.

The court recognizes that a return can be impeached "by clear and convincing evidence."

Wherein is the evidence of the Scotts lacking in clar-

ity? The court points out no lack of clarity but by a recital of the evidence shows the full, complete, unequivocal, and unambiguous denial of the Scotts.

Wherein is their evidence not convincing? It can only be on the basis of its rejection as false. Yet the court points out neither falsity nor basis of lack of credibility. The evidence was convincing to the trial court who heard the testimony and observed the witnesses. It is as clear and convincing as was the evidence in De Lair v. De Lair, 146 Neb. 771, 21 N. W. 2d 498, where this court set aside a sheriff's return made as an officer. I shall return to that decision later herein.

It seems that the only basis of rejection is the presumption that the court attaches to the return. The net of the decision, as I see it, is that the court in effect now returns to the old and generally rejected common-law rule that a return cannot be impeached. It would seem futile to try to impeach a return after this decision.

Now I apply another test to the instant decision, and that is the test of equality of litigants. It is a test suggested by the balanced scales cast in bronze in the doors of our courtroom.

How have other cases involving similar fact situations been decided?

I restate the basic fact situation here. The sworn, uncontradicted, unimpeached testimony of the Scotts is held to be outweighed by the return of the officer making the service. The return is challenged as false. The testimony of the Scotts is not.

In Graves v. MacFarland, 58 Neb. 802, 79 N. W. 707, a foreclosure decree, and later a deficiency judgment, were involved. The action was brought in Lancaster County. The sheriff of Antelope County was appointed to serve process on defendant Graves and wife. The return of the sheriff showed personal service upon Mrs. Graves and service upon Graves by leaving a copy at his usual place of residence. The Graves defaulted.

Judgment of foreclosure, and later a deficiency judgment, were entered against Graves. Graves brought an action to enjoin enforcing the judgments on the ground that he had not been served with summons. The agent of the Lancaster County sheriff (sheriff of Antelope County) testified that he served the summons as recited in his return. (There is no such testimony in the instant case.) Three witnesses, one disinterested, testified that the service was not made as returned at the Graves' residence. There this court weighed the evidence as to service at a particular time and place. Here the court puts that evidence aside. There we found on sharply conflicting evidence and contrary to the judgment of the trial court that the defendant had not been served, although the return was supported by the testimony of the person making the service. In the course of the opinion Judge Sullivan wrote: "* * * if service had really been made, it seems quite remarkable that Graves should give no attention whatever to the suit." And so here it seems quite remarkable that the Scotts "if service had really been made" paid no attention to this suit which involved their entire real estate holdings at the time.

I cannot reconcile the instant decision with the decision in Graves v. MacFarland, *supra*.

St. Paul Harvester Co. v. Mahs, 82 Neb. 336, 117 N. W. 702, involved a return made by a deputy sheriff (an officer) of Lancaster County. Default judgment was taken in 1890. Fourteen years later an effort was made to enforce the judgment. The issue of no service was raised. There the deputy sheriff testified that he must have made the service or he would not have so stated in his return. Here there was no such evidence. There the court weighed the evidence contrary to the return and found the return to be false, and sustained the defense. I mention this case because the court here holds that where the service is assailed "a long time after the judgment is entered * * * great faith and credit must

be given to the formal return of the officer." Parenthetically I suggest that a false return does not ripen into a true return by lapse of time.

I now return to the case of First Nat. Bank v. Anderson, *supra*. There the sheriff (an officer) returned the summons showing service at the usual place of residence. It was a foreclosure action. Default judgment was rendered and the property was sold. The defaulting defendants contended that they were not served with summons and had no notice of the suit. The trial court held for the purchaser at the sheriff's sale. We reversed the judgment, holding that the service had not been made. The sheriff testified to sustain his return. The proof tending to impeach his return was contradicted "in some minor particulars." Here the evidence of the Scotts is not impeached in any particular. In the course of the opinion Judge Rose wrote: "It is not likely that owners of land of such value would knowingly and willingly permit it to be sacrificed for the satisfaction of so small an indebtedness." So here it is unlikely that the Scotts would have knowingly and willingly permitted a suit to go by default that involved the title to one-fourth of their landholdings.

I now go to De Lair v. De Lair, *supra*. Six of the present seven members of this court participated in that unanimous decision. The action was one in divorce. The sheriff (an officer) recited in the return of the summons that he made service by leaving a copy at the usual place of residence. The divorce decree was rendered in 1934. Both parties remarried. Ten years later (a long time after the judgment was rendered) plaintiff sought to amend the return by showing service upon the defendant in person. The defendant joined in the motion. The cause was heard on affidavits and depositions. The interested parties testified that the service was made in person. They were supported by friends and relatives. The sheriff testified that his return was in all respects true and correct. We ordered the return

amended, although it was sustained by the testimony of the sheriff. Here the return stands alone—and we hold it must be accepted as true.

I cannot reconcile our decision in the De Lair case with the court's decision here. Interesting also is the fact that in the instant case the court cites the De Lair case for a rule of law and "a review of cases," but does not point out the diametrically opposite results in the De Lair case and the instant case.

I now review the decisions relied on by the court in their chronological order. I point out that in every instance the return was made by an "officer" as distinguished from "a person." I point out also that although we are confronted here with the question of the sufficiency of the evidence as a fact matter, the court does not see fit to mention any of the facts in the decisions upon which it relies.

Parker v. Starr, 21 Neb. 680, 33 N. W. 424, was a foreclosure action which required service upon minors and a guardian or father, and if not found, then upon the mother or person with whom the minors were living. The return showed service upon the minors and the mother. We held the service sufficient on the presumption that "the officer did his duty." The facts recited in the return were not challenged. The case has no factual resemblance to the case at bar.

Connell v. Galligher, 36 Neb. 749, 55 N. W. 229, involved a judgment rendered in 1859. Thirty years later one of the defendants offered evidence attacking the judgment on two grounds. The return showed personal service. The defendant offered evidence that he was not in Douglas County at the time of the purported service. George B. Lake appeared for the defendants "for the purpose of delay, there being no meritorious defense." The defendant contended that Mr. Lake was without authority to appear for him. The defendants were copartners. Mr. Lake testified that he was employed by a member of the firm. During the intervening

30-year period Mr. Lake was for many years a member of this court. We held that the burden of proof was upon the defendant to prove both propositions, and that he had proven neither one. We did not undertake to decide what the result would have been had he proven one and not the other. We held that the "proceedings" sustained the judgment.

Unangst v. Southwick, on rehearing, 80 Neb. 119, 116 N. W. 864, was a foreclosure action. The sheriff's return showed personal service of summons upon the defendant wife. She challenged that service as plaintiff in this action. The court's opinion quotes from this case to the effect that an officer's return cannot be "superseded by such evidence as this." So let's examine the evidence in that case.

There the sheriff's (officer's) testimony supported his return. Here there is no such supporting testimony. But let's go on.

Plaintiff testified that at the time of the purported service she was served with notice of an application for the appointment of a receiver in the same action but was not served with summons. All witnesses agreed that both notice and summons were served on the husband in the action where she was named as a party. It was held: "It seems improbable that he (sheriff) would serve upon the plaintiff only the notice of the application for receiver and make his return showing the service of the summons upon her. He had the opportunity to serve it. In the summons, both the husband and wife were named as defendants. We fear that it would be a dangerous precedent to adhere to a rule which would permit an officer's return to be superseded by such evidence as this."

It is upon that fact situation in the Unangst case that the rule relied on by the court in the instant case was announced applicable to "such evidence" as was there offered. That case is not this case factually.

We finally held in the Unangst case that plaintiff had

received "from the process of the court, actual notice of the pendency of the suit." The evidence other than the return showed the actual notice. In the instant case it does not. In the instant case the court cites no evidence, other than the return of the person serving, to sustain its holding. In the Unangst case the circumstances corroborated the sheriff's return. Here there are no such circumstances.

Westman v. Carlson, 86 Neb. 847, 126 N. W. 515, involved not personal service but service at the usual place of residence. There was no claim of personal service as in the instant case, and accordingly no denial of personal service as in the instant case. Of the three people who could have received the service at the usual place of residence, two were dead when an attempt was made to enforce the judgment 10 years after it was rendered by default. The remaining witness denied knowledge of the service but admitted that the summons could have been handed to either of the others. The decision rests upon the presumption that the officer performed his duty. That is not this case.

The court quotes from Janous v. Columbus State Bank, 101 Neb. 393, 163 N. W. 327. The quote is correct. However, in the next sentence we stated that it had no application to the facts of the case. Of course, that does not alter the rule. There the officer testified not "a long time after the judgment," but "soon after" the purported service was made. He handed the summons to an elderly lady who spoke English very little but did speak German. He told her "as near as I could" that it was a summons. She returned it to him and told him to give it to Joe—apparently a son-in-law, and a principal defendant. We held that what happened did not amount to service without proof that Mrs. Janous received the summons with knowledge that it was the service of a summons. After weighing the "officer's" testimony we held that the summons had not been served and set aside the judgment based thereon. Just where this

case, fact-wise, supports the court's fact conclusion is not at all clear to me.

The court cites but does not quote from Campbell v. Harvard State Bank, 103 Neb. 562, 173 N. W. 587. In this action the officer testified that he made personal service upon the wife who was sued with her husband and identified in the courtroom as the person served. There is no such identification here. The parties appeared by attorneys whose authority was not challenged. We concluded from the evidence that the defendants knew of the action and paid no attention to it because they thought they had no property subject to execution. We did not decide the case on the premise that the service of summons was good. The decision rests upon "a general rule that a court of equity will not set aside a judgment rendered in a case where the party complaining had full notice and knowledge of the pendency of the suit and took no steps to protect his interest at that time."

Ault v. Stewart, 113 Neb. 47, 201 N. W. 639, is cited by the court. This case states a rule of law about which there is no dispute. That the summons was served was not disputed. The question was whether service was had in Scotts Bluff or Sioux Counties. It was good if served in Scotts Bluff County and void if served in Sioux County. It was a fact matter not in anywise comparable to the problem here.

Finally we come to the crux of this case.

The testimony of the Scotts that they were not served would be accepted in any proceeding where that was the fact to be ultimately determined. The court does not refuse to accept the fact here. The court rejects the Scott testimony not because it is not true but because it is not the "type of evidence" necessary to overcome the return. Parenthetically it is the same "type of evidence" that appears in the cases where we have rejected the return showing service. This conclusion of the court relates back to the holding in Unangst v. South-

wick, *supra*, and to the case of Westman v. Carlson, *supra*, wherein we stated that it was "essential to the integrity and permanency of judicial records."

The facts in the two cases have been summarized above. But in those two cases the facts outside the return did not establish its falsity. Here the court holds that the return controls and is superior to the undisputed, unimpeached testimony of the Scotts.

The records of a court should be protected when they speak the truth and should be reformed to speak the truth when they do not. The integrity of the judicial process and the confidence of people in the courts require it. The rules which the court quotes admit the right and duty of a court to make the records speak the truth. But in the application here the truth is denied because it is in conflict with the record.

There is not involved here alone the theory of the integrity of judicial records. Constitutional rights of people to life, liberty, and property, and due process of law are involved.

To sustain a record as superior to those rights is a shocking thing.

DuBois v. Clark, 12 Colo. App. 220, 55 P. 750, is a case where an officer made a return showing personal service. One of the defendants purportedly served moved to vacate a judgment on the ground that service of summons was not made upon him. The trial court denied the motion. On appeal the question was whether if the return was false its falsity could be shown. The court discussed the old common-law rule that the return was conclusive and rejected that rule. It discussed presumptions that attached to a return. It discussed attempted service and the unreliability of a return where the officer did not know the parties to be served or where they could be found (a situation which exists in the instant case). The court then held: "But, aside from all this, section 25 of the bill of rights provides that no person shall be deprived of life, liberty or property,

without due process of law. The legislature has prescribed the process necessary where life or liberty is involved, and it has also prescribed the process necessary to the rendition of judgments in civil actions, by means of which parties may be deprived of their property. The process prescribed is actual process, to be actually served, in some one of the methods specified. *A person cannot be deprived of his life or liberty on a presumption, unless the presumption and the fact accord,* and as, in respect to process, the constitution places life, liberty and property upon an equality, *a party cannot be deprived of his property, without service of process in the manner provided by law.* A presumption of service may or may not be true, and, if it is false, a judgment entered upon it, if it is enforced by execution, results in depriving the person who is the subject of the presumption, of his property without due process of law." In effect we approved this rule in First Nat. Bank v. Anderson, *supra,* where we held that courts cannot strip landowners of title without notice to them.

Here a presumption not in accord with the proven facts is allowed to deprive the Scotts of the right to protect a valuable property right.

In the recent case of Iwerks v. People, 130 Colo. 86, 273 P. 2d 133, the court determined a question which involved a sheriff's return showing service. The court found that what papers, if any, were served was "a matter of grave doubt." It held: "In matters of this kind where grave doubt arises concerning what was actually done, that doubt must be resolved in favor of the person alleging that no service was made."

At best, from the view of the State, whether the summons was served here is a matter of grave doubt. I would follow the rule of simple justice, set aside this judgment, and allow the Scotts to defend. No rights of other parties have arisen during the intervening 22 years while the State stood by and did nothing. The

issue then was and now would be: What are the proper boundaries of the land involved?

The judgment of the trial court did not determine the issue of the land boundaries. It merely gave them the right to defend if the State elected to proceed with its action against them. I would affirm the judgment of the trial court.

One other matter in the opinion of the court requires mention.

I pointed out earlier herein that 2 of the 14 defendants answered. The transcript shows that trial was had. The judgment recites: "The parties being present in court" trial began on one day and continued the next day. The State contends that the above recital shows a voluntary appearance of the Scotts, equivalent to the service of process. The court holds that there "may be merit" to the contention but does not decide it. As I view it the contention is utterly void of any merit.

To sustain the State's contention would be equivalent to finding that all of the defendants, including the county and a corporation, not pleading, were present in court and thereby conclusively bound by the judgment.

The answering defendants in 1933 were the parties who owned the land to the north of Section 16. They were the ones who stood to lose a substantial acreage of their land if the 1928 survey was adjudged to be correct. It would be an assumption contrary to experience to hold that the Scotts sat in court for 2 days while the 1928 survey which sustained their holdings was under attack and did and said nothing then or thereafter when the court held that survey to be in error.

I mention the contention here only because it illustrates the extent to which the State is willing to go to sustain a judgment depriving the Scotts of one-fourth of their landholdings.